PETER STIRBA (Bar No. 3118)
BRADLEY A. SCHMIDT (Bar No. 16155)
**STIRBA, P.C.**
215 South State Street, Suite 750
P.O. Box 810
Salt Lake City, UT 84110–0810
Telephone:  (801) 364–8300
Facsimile:  (801) 364–8355
Email:  bschmidt@stirba.com

*Attorneys for Plaintiff Sherman G. Sorensen, M.D.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHERMAN G. SORENSEN, M.D.,<br><br>   Plaintiff,<br><br>v.<br><br>GERALD I. POLUKOFF, M.D.; ZABRISKIE LAW FIRM, LLC, a Utah limited liability company; RHOME ZABRISKIE, J.D.; FLEMING, NOLEN & JEZ, LLP, a Texas limited liability partnership; and RAND P. NOLEN, J.D.,<br><br>   Defendants. | **VERIFIED COMPLAINT<br>AND JURY DEMAND**<br><br>Case No. 2:18–cv–00067<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff, Sherman G. Sorensen, M.D., by and through undersigned counsel, STIRBA, P.C., hereby complains, alleges, and avers against Defendants as follows:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367; 18 U.S.C. § 1964(c); and 28 U.S.C. § 2201.

2.      Venue in this action is proper in this Court pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391.  Defendants Gerald I. Polukoff, M.D.; Rhome Zabriskie, J.D.; and Zabriskie Law Firm, LLC, are subject to personal jurisdiction in this judicial district and either reside in or have their principal place of business in this district.  Defendants Rand P. Nolen and Fleming, Nolen & Jez, LLP, have engaged in the practice of law in this judicial district.  Furthermore, a substantial part of the events giving rise to the claims asserted herein occurred in Summit, Salt Lake, and Utah Counties, State of Utah.

## PARTIES

3.      Plaintiff Sherman G. Sorensen, M.D. ("Dr. Sorensen"), is an individual and has been at all relevant times, a resident of Summit County, State of Utah.  In 2006, Dr. Sorensen formed the Sorensen Cardiovascular Group ("SCG"), which provided cardiology services in Salt Lake City, Utah, until December 2011.

4.      Defendant Gerald I. Polukoff, M.D. ("Dr. Polukoff"), is an individual and on information and belief, has been at all relevant times, a resident of Summit County, State of Utah.

5.      Defendant Zabriskie Law Firm, LLC, is a limited liability company duly organized under the laws of the State of Utah and at all relevant times was doing business in the State of Utah.

6.      At all relevant times, Defendant Rhome Zabriskie, J.D., was an attorney with the Zabriskie Law Firm, LLC.  On information and belief, Mr. Zabriskie has begun to initiate over 800 medical malpractice actions in the State of Utah as a result of the misconduct alleged herein. Mr. Zabriskie acted on behalf of himself and Zabriskie Law Firm, LLC.

7.     Defendant Fleming, Nolen & Jez, LLP ("FNJ"), is a limited liability partnership duly organized under the laws of the State of Texas.

8.     At all relevant times, Defendant Rand P. Nolen, J.D., was an attorney with Fleming, Nolen & Jez, LLP.  Mr. Nolen has been admitted on a *pro hac vice* basis to practice law in the State of Utah in a matter related to this action.  Furthermore, on information and belief, Mr. Nolen has begun to initiate over 800 additional medical malpractice actions in the State of Utah as a result of the misconduct alleged herein.  Mr. Nolen acted on behalf of himself and FNJ.

## GENERAL ALLEGATIONS

### Factual Background

9.     Dr. Sorensen is a duly licensed physician who has been licensed in the State of Utah since 1982.  Dr. Sorensen is a prominent cardiologist and is nationally recognized for his expertise in a medical procedure known as patent foramen ovale ("PFO") closures.

10.     PFO is a defect in the septum (wall) between the two upper (atrial) chambers of the heart.  Specifically, the defect is an incomplete closure of the atrial septum that results in the creation of a flap or a valve-like opening in the atrial septal wall.  A PFO is frequent in everyone before birth but seals shut in about 80% of people.

11.     Given his expertise, Dr. Sorensen has performed a large number of PFO closures throughout the years and provided follow-up medical care for those patients through his practice with SCG.

12.     As a result of this care, Dr. Sorensen maintained medical and billing records for each patient.

13.     Patient medical charts were kept in paper format and were securely stored in the SCG office.

14.     Conversely, patient billing records were maintained digitally and were stored on a series of hard drives that were housed on the SCG site.  These patient billing records contained confidential and sensitive patient information, which included:  (1) patient names, addresses, telephone numbers, and other personal identifying information; (2) patient demographic information; (3) patient insurance information; (4) patient charges; and (5) a summary of the care received by SCG patients.

15.     A local technical support company named TecCon, Inc., performed the maintenance and periodic replacement of these hard drives for SCG.

16.     Furthermore, all work that was to be performed by TecCon on behalf of SCG had to be authorized by either Dr. Sorensen or the SCG Office Manager.

**The Business Relationship Between Dr. Sorensen and Dr. Polukoff**

17.     In 2009, Dr. Polukoff approached Dr. Sorensen and expressed an interest in working for SCG as a Cardiologist.

18.     Dr. Polukoff indicated that he wanted to leave the cardiology group he was working for at the time, and that he was very interested in learning PFO closure techniques.

19.     The proposition was discussed between Dr. Polukoff and Dr. Sorensen; however, Dr. Sorensen ultimately decided that he was not interested in bringing Dr. Polukloff, or any other cardiologist, onto the SCG staff at the time.

20.     In early 2011, Dr. Sorensen was made a professor of medicine with the University of Utah School of Medicine.  As a result, Dr. Sorensen decided to scale back his clinical practice, so as to allow him to participate more in academia.

21.     Hoping to maintain the SCG practice, Dr. Sorensen reached out to several cardiologists and inquired about their interest in joining the SCG staff.

22.     Due to his prior interest, Dr. Polukoff was one of the cardiologists that Dr. Sorensen reached out to.

23.     Dr. Polukoff reaffirmed his interest in joining SCG's staff as a cardiologist and learning PFO closure techniques.

24.     As a result, Dr. Sorensen and Dr. Polukoff began to negotiate potential terms of employment with SCG.

25.     Given his intention to scale back his clinical practice, Dr. Sorensen envisioned Dr. Polukoff assuming the entirety of SCG's practice with Intermountain Healthcare, while Dr. Sorensen would maintain a limited clinical practice at St. Mark's Hospital and the University of Utah Medical Center.

26.     In June 2011, Dr. Polukoff signed an employment agreement with SCG.

27.     Pursuant to the employment agreement, Dr. Polukoff was to provide services to SCG and to its patients through medical services, emergency/on call coverage, as well as admitting and referring patients.

28.     Under the agreement, Dr. Polukoff was not authorized to make decisions or formulate policies on behalf of SCG.

29.     The employment agreement also established specific performance responsibilities that Dr. Polukoff was expected to perform.  Among those responsibilities were the following: (1) to execute and abide by the SCG Access and Confidentiality Agreement; (2) to comply with the Health Insurance Portability and Accountability Act; and (3) adhering to the SCG Compliance Policies and Procedures.

30.     Despite signing the employment agreement in June 2011, Dr. Polukoff did not begin practicing with SCG until August 2011.

31.     During the initial months of his employment, Dr. Polukoff was training under Dr. Sorensen, learning PFO closure techniques.  Dr. Polukoff did not have privileges to perform PFO closures with either Intermountain Healthcare or Saint Mark's Hospital while employed by SCG. As a result, Dr. Polukoff did not independently handle any PFO closures at either hospital while with SCG.

32.     Because Dr. Polukoff was not providing independent medical care while with SCG, he was not given authority to access patient medical records or any of SCG's billing records.

**Dr. Sorensen's Decision to Retire**

33.     In July 2011, Dr. Sorensen suffered and was treated for a heart attack.

34.     Though he returned to work, Dr. Sorensen made the decision, as a result of the heart attack, that he would retire in December 2011.

35.     Recognizing that he had agreed to employ Dr. Polukoff for at least one year, Dr. Sorensen approached Dr. Polukoff about his decision.

36.     In discussing his decision, Dr. Sorensen told Dr. Polukoff that he would either pay Dr. Polukoff the remaining balance of his guaranteed salary, or he would turn the SCG practice over to Dr. Polukoff.

37.     Dr. Sorensen conditioned the offer to turn over the SCG practice on Dr. Polukoff agreeing to continue to employee all support staff, as well as Dr. Polukoff assuming the lease for the office space.

38.     Dr. Polukoff indicated that he would consider the offer, but that he would need to ensure the financial viability of SCG before deciding to either accept or reject.

39.     On October 2, 2011, Dr. Sorensen announced to the remaining SCG staff that he intended to retire in December 2011.

40.     Shortly thereafter, Dr. Sorensen was approached by several members of the SCG billing office, informing him that Dr. Polukoff was attempting to obtain their passwords so as to access SCG's billing records.  Dr. Sorensen instructed the staff members to not provide Dr. Polukoff with their passwords.  However, Dr. Sorensen did instruct his billing manager to provide Dr. Polukoff with a limited report outlining SCG's account receivables.

41.     At no time was Dr. Polukoff authorized by Dr. Sorensen, or any other SCG staff member, to access, copy, or use patient medical records or SCG billing records.

**The Stolen Hard Drive and Unauthorized Access to SCG Records**

42.     On May 9, 2011, with the authorization of Dr. Sorensen, TecCon installed new backup hard drives for SCG.

43.     On October 7, 2011, five days after Dr. Sorensen had announced his retirement plans, Dr. Polukoff met with TecCon.  The meeting with TecCon was not authorized by, nor was

it disclosed to Dr. Sorensen.  However, in that meeting, Dr. Polukoff informed the TecCon technician, Scott Peacock, that he would be assuming ownership of SCG and wanted to discuss future work by TecCon.  Additionally, Dr. Polukoff instructed that new backup hard drives be installed, despite the fact that new hard drives had already been installed in May 2011.  In addition to having new hard drives installed, Dr. Polukoff instructed Mr. Peacock to provide him (Dr. Polukoff) with a backup hard drive to take offsite.  As a result of that directive, Dr. Polukoff was given a backup hard drive (the "Stolen Hard Drive") which he took off the SCG site. Neither TecCon, nor Dr. Polukoff informed Dr. Sorensen that Dr. Polukoff was given the Stolen Hard Drive.

44.     On October 14, 2011, Dr. Polukoff met with TecCon again.  Like the October 7 meeting, the October 14 meeting was not authorized by, or disclosed to, Dr. Sorensen.  In the October 14 meeting, Dr. Polukoff instructed the TecCon technician, again Scott Peacock, to set up and provide him with remote access to SCG's billing records.  Mr. Peacock executed the request.

45.     In early November 2011, Dr. Sorensen approached Dr. Polukoff again about his offer to turn over SCG and whether Dr. Polukoff had decided to accept or reject the offer.

46.     Dr. Polukoff declined Dr. Sorensen's offer to assume ownership of SCG and elected to receive the remainder of his guaranteed salary.  As a result, Dr. Polukoff and Dr. Sorensen executed an Agreement and General Release and Dr. Polukoff's employment was terminated.

47.     Under the Agreement and General Release, Dr. Polukoff was paid a lump sum of $200,000.00, which was intended to satisfy the remaining guaranteed salary under the initial employment agreement.

48.     Additionally, the Agreement and General Release required SCG to pay a lump sum of $13,677.00 to Dr. Polukoff for the purpose of activating the tail insurance coverage on Dr. Polukoff's malpractice insurance.

49.     Under the Agreement and General Release, Dr. Polukoff agreed to not make any statements that were professionally or personally disparaging about SCG, Dr. Sorensen, or SCG employees.

50.     Shortly thereafter, Dr. Sorensen became aware that Dr. Polukoff had been granted remote access to SCG's billing records.  He immediately contacted TecCon and instructed them to terminate Dr. Polukoff's access.

51.     In December 2011, after closing SCG, Dr. Sorensen was alerted by the SCG staff that a backup hard drive might be missing.  However, neither TecCon, nor the SCG Staff, could determine whether a hard drive was indeed missing.

52.     Therefore, as a matter of precaution, Dr. Sorensen sent an email to Dr. Polukoff, asking if Dr. Polukoff was aware of a missing backup hard drive.  Dr. Polukoff denied any knowledge of a missing hard drive and indicated to Dr. Sorensen that he would look through his things for a hard drive, but never indicated as to whether one was ultimately found.

### The *Qui Tam* Action

53.     On December 6, 2012, Dr. Polukoff initiated a *qui tam* action against Dr. Sorensen, SCG, St. Mark's Hospital, Intermountain Healthcare, Intermountain Medical Center,

and HCA, Inc.  The action was filed in the United States District Court for the Middle District of Tennessee, alleging fraudulent Medicare/Medicaid billing in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*  (*See United States ex rel. Gerald Polukoff v. St. Mark's Hospital, et al.*, Case No. 3:12-cv-01277, before the Hon. Kevin Sharp, M.D. Tenn.).

54.     As *qui tam* plaintiff, Dr. Polukoff alleged that Dr. Sorensen had performed medically unnecessary PFO closures on patients and conspired with the other defendants in the *qui tam* action to improperly bill the United States Government by submitting false claims for reimbursement under Medicare and Medicaid.

55.     At some point prior to December 2015, Dr. Polukoff engaged Defendants Rand Nolen and FNJ to act as counsel in the *qui tam* action.  At that time, Dr. Polukoff delivered the Stolen Hard Drive to Mr. Nolen and FNJ in Texas.

56.     Mr. Nolen and FNJ continue to possess the Stolen Hard Drive.

57.     On December 3, 2015, Mr. Nolen, along with local counsel, filed an Amended Complaint for Damages on behalf of Dr. Polukoff in the *qui tam* action.

58.     In the Amended Complaint, Dr. Polukoff disclosed that he was in possession of the Stolen Hard Drive, as well as several other SCG billing documents.

59.     Subsequently, Dr. Sorensen, SCG, and the other medical facilities moved to have the action dismissed.

60.     On April 13, 2016, the Honorable Kevin Sharp, granted a motion to dismiss the claims against HCA, Inc.  Judge Sharp found that Dr. Polukoff provided no particular allegations about when HCA would have learned about the allegedly unnecessary PFO closures or what

actions HCA might have taken to perpetuate the alleged fraud.  Because Dr. Polukoff's claims rested upon "unsubstantiated speculation," the Court dismissed the claims against HCA.

61.     As to the remaining defendants, Judge Sharp reserved ruling on their motions to dismiss because the Judge found that venue was no longer proper.  As a result, Judge Sharp transferred the *qui tam* action to the United States District Court for the District of Utah.

62.     On January 19, 2017, the Honorable Jill Parrish addressed three motions to dismiss, filed by Intermountain Healthcare, St. Mark's Hospital, and Dr. Sorensen respectively.

63.     In doing so, Judge Parrish conclusively found that Medicare had not issued any guidelines for when it would and would not pay for a PFO closure.  Judge Parrish also held that for liability to attach, the allegations had to be predicated on an objectively verifiable fact.  Judge Parrish warned that "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false."

64.     Ultimately, Judge Parrish found that the allegations in Dr. Polukoff's Complaint were based on subjective medical opinions that could not be proven to be objectively false. As a result, Judge Parrish dismissed the *qui tam* action with prejudice.

### Dr. Sorensen's Demand for Return of the Stolen Hard Drive

65.     On July 13, 2016, counsel for Dr. Sorensen sent a letter to Mr. Nolen, demanding that Dr. Polukoff return the Stolen Hard Drive, as well as any other protected health information ("PHI") that was in Dr. Polukoff's possession.  In addition to returning the Stolen Hard Drive and other PHI, Dr. Sorensen demanded that Dr. Polukoff, as well as his agents and attorneys, provide declarations under oath that they did not delete, modify, make, or retain copies of the Stolen Hard Drive and other PHI.

66. In a response letter dated July 20, 2016, Mr. Nolen stated the following:

> To address some of Dr. Sorensen's alleged concerns raised in your correspondence:
>
> 1. The hard-drive is presently in my firm's possession and control.
>
> 2. We do not have any copies or backups.
>
> 3. Dr. Polukoff does not have any duplicates or backups.
>
> 4. The hard-drive has not been deleted or otherwise modified by Dr. Polukoff or anyone acting on his behalf.
>
> 5. My firm has instituted standard HIPAA guidelines and has applied them to his hard-drive and its data.
>
> 6. The hard-drive was provided to the United States Department of Justice, and returned.
>
> 7. Rhome Zabriskie and the Zabriskie Law Firm, L.L.C., are co-counsel on the *qui tam* action, but have never been in possession of the encrypted hard-drive.

Mr. Nolen's letter went on to state: "Dr. Polukoff respectfully declines your client's demand to return the hard-drive and declines your demand for a declaration under oath at this time."

**Impermissible Use of the Stolen Hard Drive**

67. On information and belief, Mr. Nolen and FNJ accessed the confidential and protected patient information stored on the Stolen Hard Drive to ascertain the identity of Dr. Sorensen's former patients, their contact information, and the summary of medical care received by each patient.

68. Using this information, Mr. Nolen and FNJ transmitted the relevant patient information from Texas to Mr. Zabriskie and the Zabriskie Law Firm in Utah.

69. Thereafter, Mr. Nolen and FNJ engaged in extensive electronic, as well as telephonic, communications with Mr. Zabriskie and the Zabriskie Law Firm, in an effort to

coordinate and execute a concerted plan to target and directly solicit Dr. Sorensen's former patients to participate in medical malpractice lawsuits.

70.     As part of that plan, Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm, used the information contained on the Stolen Hard Drive to create direct solicitation letters for Dr. Sorensen's former patients.

71.     Each of these letters included paperwork which the former patient was asked to sign, so as to allow Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm, to initiate an action against Dr. Sorensen.

72.     Furthermore, when a former patient did not respond to the initial solicitation letter, Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm, would send a follow-up letter which indicated Mr. Zabriskie's continued interest in pursuing the former patient's case.  Specifically, these letters stated the following:

> I think you will be interested to hear that we conducted the first of what will be hundreds of hearings before the Department of Professional Licensing (DOPL).   These hearings are necessary precursors to litigation in any medical negligence case in the State of Utah.  In the hearing the respective parties are allowed to present the facts in the case to a panel.  Then panel then deliberates on the facts in the case and issues an opinion as to whether the case does or does not have merit.  Although the opinion of the panel is non-binding the parties still consider the opinion to be important as it is the first objective indicator as to whether a case has merit.  We have received the first opinion back on one of these hearings and the DOPL panel found that our claim against the doctor (performing an unnecessary pfo/asd closure procedure) had merit.  Keep in mind that the facts in this client's case were nearly identical to the facts in your case.

73.     The foregoing excerpt clearly emphasizes that a case that was "nearly identical" factually to the former patient's case, had been considered by a pre-litigation panel and was found to have merit.

74.     The only way for Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm to have actual knowledge regarding the factual background of a former patient's case was for Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm to access and use the confidential and protected patient information contained on the Stolen Hard Drive.

**FIRST CAUSE OF ACTION**
**(Conduct and Participation in a RICO Enterprise through a Pattern of**
**Racketeering Activity – 18 U.S.C. § 1962(c))**

75.     Plaintiff hereby incorporates paragraphs 1 through 74 above.

76.     At all relevant times, each Defendant is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), in that they are individuals and legal entities that are "capable of holding a legal or beneficial interest in property."

77.     Each Defendant has been and continues to be associated with an "enterprise" (the "Solicitation Enterprise"), as defined by 18 U.S.C. § 1961(4), in that they are individuals and legal entities, which have associated in fact.

78.     Based on the facts alleged above, the Solicitation Enterprise pursued, and continues to pursue, a common purpose of recovering money from Dr. Sorensen, SCG, and other medical providers through the initiation of medical malpractice lawsuits.   Dr. Polukoff transported, transmitted, or transported the Stolen Hard Drive across state lines with knowledge that the Stolen Hard Drive was stolen/converted, while authorizing Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm to access and used the confidential and protected patient

14

information contained on the Stolen Hard Drive to directly solicit Dr. Sorensen's former patients' participation in potential medical malpractice suits.

79.     The Solicitation Enterprise is engaged in, and its activities affect, interstate commerce as is required by 18 U.S.C. § 1962(c).

80.     At all relevant times, each Defendant agreed to and did conduct and participate, and continues to conduct and participate, either directly or indirectly, in the conduct of the Solicitation Enterprise's affairs through a pattern of racketeering activity

81.     Pursuant to and in furtherance of their common purpose, Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of 18 U.S.C. § 1962(c).  Specifically, the Stolen Hard Drive was transported, received, and possessed across state lines, with knowledge that the Stolen Hard Drive was stolen, converted, or taken by fraud in violation of 18 U.S.C. §§ 2314 and 2315.  In addition, Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm violated 18 U.S.C. §§ 1341 and 1342 (i.e., mail and wire fraud), which constitutes "racketeering activity" under 18 U.S.C. § 1961.

82.     Dr. Polukoff, transported, transmitted, or transferred the Stolen Hard Drive across state lines.  The Stolen Hard Drive, and the data contained on it, has a value that exceeds $5,000.  Furthermore, Dr. Polukoff caused the Stolen Hard Drive to be transported, transmitted, or transferred across state lines with knowledge that the Stolen Hard Drive was stolen, converted, or taken by fraud, in violation of 18 U.S.C. § 2314.

83.     FNJ and Mr. Nolen, having knowledge that the Stolen Hard Drive was either stolen, unlawfully converted, or taken, received and continue to possess the Stolen Hard Drive, in violation of 18 U.S.C. § 2315.

84.     Mr. Zabriskie and the Zabriskie Law Firm, having knowledge that the Stolen Hard Drive and its contents were either stolen, unlawfully converted, or taken, as well as having knowledge that the Stolen Hard Drive and its contents had crossed a State boundary after it was stolen, unlawfully converted, or taken, received and continue to possess stolen data from the Stolen Hard Drive in violation of 18 U.S.C. § 2315.

85.     Mr. Nolen, FNJ, Mr. Zabriskie, and Zabriskie Law Firm continue to access the Stolen Hard Drive to obtain private and confidential identifying information regarding Dr. Sorensen's former patients, in an attempt to directly, and in a targeted manner, solicit additional clients to pursue medical malpractice claims against Dr. Sorensen.  On at least one occasion, Mr. Nolen has directly referenced the growing number of potential cases against Dr. Sorensen.  By using this stolen information, Defendants are attempting to extract a large financial settlement from Dr. Sorensen, SCG, and other medical providers, by threatening extensive litigation against Dr. Sorensen, SCG, and the other medical providers.  Such conduct constitutes extortion as defined in 18 U.S.C. § 1951.

86.     Despite the fact that the Honorable Jill Parrish held, as a matter of law, that the PFO closures performed by Dr. Sorensen could not be deemed unnecessary, Mr. Nolen, FNJ, Mr. Zabriskie, and the Zabriskie Law Firm have continued to send letters to Dr. Sorensen's asserting that Dr. Sorensen performed unnecessary PFO closures.  While Dr. Sorensen cannot allege the exact number of instances in which the Defendants have sent the aforementioned letters, Dr.

Sorensen can confirm that such a letter was transmitted on at least one occasion.  And though all of the dates of the fraudulent uses of the U.S. Mail and interstate wire facilities are not yet know, on information and belief, and based upon the volume of communications that would be necessary to solicit over 800 former patients, the number of fraudulent uses of the mail and interstate wire number in the hundreds and continue today.

87.    The Zabriskie Law Firm and Mr. Zabriskie, likewise made false or misleading claims in violation of 18 U.S.C. § 1343, which include but are not limited to:  (1) statements on there website that many of the PFO closures performed by Dr. Sorensen were performed in violation of FDA and AMA standards; and (2) stating on their website and Facebook page that Dr. Sorensen engaged in "medical abuse."

88.    The acts set forth in paragraphs 82 through 87 constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

89.    Defendants, either directly or indirectly, conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity set forth in paragraphs 82 through 87, and did so in violation of 18 U.S.C. § 1962(c).

90.    As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Dr. Sorensen has been injured in his property in that he has been required to expended a considerable monetary amount that he would not otherwise have been required to spend to defend against these frivolous actions.

### SECOND CAUSE OF ACTION
**(Request for Declaratory Relief for Violation of the Health Insurance Portability and Accountability Act Against All Defendants – 28 U.S.C. § 2201)**

91.    Plaintiff hereby incorporates paragraphs 1 through 90 above.

92.     In a case of actual controversy, this Court has the authority to declare the rights and other legal relations of any interested party, whether or not further relief is or could be claimed; and such declaration shall have the force and effect of a final judgment or decree.

93.     The Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. 1320d *et seq.*, prohibits the wrongful use or disclosure of individually identifiable health information.  Individually identifiable health information includes information that identifies a patient and relates to the physical or mental health or condition of the patient, or the provision of health care to the patient.

94.     Under HIPAA, it is unlawful for an individual to acquire, access, use, or disclose individually identifiable health information in a manner not permitted by the statute.  Use of individually identifiable health information in a personal lawsuit is not a permitted use under HIPAA.

95.     In the instant case, Dr. Polukoff breached HIPAA when he accessed, used, and disclosed the individually identifiable health information of SCG patients for purposes of aiding in the initiation of private medical malpractice litigation against Dr. Sorensen, SCG, and other medical facilities.

96.     Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen, breached HIPAA when they accessed and used the individually identifiable health information of SCG patients to contact over 800 of Dr. Sorensen's former patients to solicit their participation in medical malpractice litigation against Dr. Sorensen, SCG, and other medical facilities.

97.     As a direct and proximate result of the actions of Defendants, Dr. Sorensen has expended a considerable monetary amount that he would not otherwise have been required to

spend to defend against these frivolous actions.  Furthermore, Dr. Sorensen has an affirmative duty to disclose any breaches of individually identifiable health information to the affected patients.

98.     As a result of the foregoing, Dr. Sorensen requests the Court conduct an in camera review of the Stolen Hard Drive and SCG billing records that are in the possession of Dr. Polukoff, Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen, and declare through judgment whether or not the Stolen Hard Drive and other SCG billing records at issue in fact contain individually identifiable health information.

### THIRD CAUSE OF ACTION
**(Misappropriation of Trade Secrets Against All Defendants –
Utah Code Ann. §§ 13–24–1 through –9)**

99.     Plaintiff hereby incorporates paragraphs 1 through 98 above.

100.     At all relevant times, Dr. Sorensen was in possession of trade secrets—in the form of patient lists—as defined by Utah Code Ann. § 13–24–2(4).  The patient lists contained on the Stolen Hard Drive and other SCG billing records constitute trade secrets because Dr. Sorensen derives independent economic value from that information, such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

101.     As a product of his employment with SCG, Dr. Polukoff had an affirmative duty to maintain the secrecy of these lists.  Furthermore, Dr. Polukoff did not have a right to access, use, or disclose this information.  Despite this fact, Dr. Polukoff continues to have access to Dr. Sorensen's patient lists because he breached his duty to maintain secrecy and stole the Stolen

Hard Drive and other SCG billing records.  Subsequently, Dr. Polukoff disclosed Dr. Sorensen's patient lists to the Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen.

102.    Defendants Zabriskie Law Firm, Rhome Zabriskie, FNJ, and Rand Nolen have used Dr. Sorensen's patient lists without the express or implied consent of Dr. Sorensen.  In using these patient lists, Defendants knew that their knowledge of the patient lists was derived from Dr. Polukoff who utilized improper means to acquire them and that Dr. Polukoff owed a duty to Dr. Sorensen to maintain their secrecy.

103.    As a proximate result of Defendants' misappropriation of Dr. Sorensen's trade secrets, Dr. Sorensen has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial.

104.    As a further proximate result of Defendants' wrongful conduct and misappropriation, Dr. Sorensen has been injured, irreparably and otherwise, and is threatened with additional and on-going injuries.  Because Dr. Sorensen's remedy at law is inadequate, Dr. Sorensen seeks temporary, preliminary and permanent injunctive relief.

105.    Dr. Polukoff's misappropriation of the patient lists, as well as the Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen's continued use of Dr. Sorensen's patient lists was willful and malicious.  Therefore, Plaintiff is entitled to an award of exemplary damages and reasonable attorneys' fees pursuant to Utah Code Ann. §§ 13–24–4(2) & 5.

### FOURTH CAUSE OF ACTION
**(Conversion Against Dr. Polukoff – Utah Common Law)**

106.    Plaintiff hereby incorporates paragraphs 1 through 105 above.

107.    By instructing TecCon to produce the Stolen Hard Drive without Dr. Sorensen's authorization and taking the Stolen Hard Drive offsite, Dr. Polukoff willfully interfered with chattel belonging to Dr. Sorensen.

108.    Dr. Polukoff's willful interference with the Stolen Hard Drive was without lawful justification, and deprived Dr. Sorensen of the exclusive use, possession, and/or control of the Stolen Hard Drive.

109.    As a proximate result of Dr. Polukoff's conduct, Dr. Sorensen has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial.

110.    Because Dr. Polukoff's conduct was willful and malicious, and because it manifested a knowing and reckless indifference toward, and a disregard of, the rights of Dr. Sorensen, he is entitled to an award of punitive damages against Dr. Polukoff pursuant to Utah Code Ann. § 78B–8–201(1)(a).

**FIFTH CAUSE OF ACTION**
**(Receiving Stolen Property Against Zabriskie Law Firm, Rhome Zabriskie,**
**FNJ, and Rand Nolen – Utah Code Ann. §§ 76–6–408 & 412)**

111.    Plaintiff hereby incorporates paragraphs 1 through 110 above.

112.    During the course of his employment with SCG, Dr. Polukoff was not authorized to copy or take any patient medical files, billing records, or other records regarding patient care that were maintained by SCG and Dr. Sorensen.

113.    Despite this fact, Dr. Polukoff instructed TecCon to produce a backup hard drive to take off site.  Dr. Polukoff was not authorize to direct TecCon to produce the Stolen Hard Drive, nor was he authorized to possess the Stolen Hard Drive.

114.    The Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen, received and have retained a copy of the Stolen Hard Drive and SCG billing records from Dr. Polukoff.

115.    The Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen, know that Dr. Polukoff stole the Stolen Hard Drive and SCG billing records.

116.    As a proximate result of Defendants' conduct, Dr. Sorensen has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial.  Pursuant to Utah Code Ann. § 76–6–412(2), Dr. Sorensen is entitled to monetary damages for three times the amount of actual damages, costs of suit, and reasonable attorney's fees.

### SIXTH CAUSE OF ACTION
**(Civil Conspiracy Against Zabriskie Law Firm, Rhome Zabriskie, FNJ, and Rand Nolen – Utah Common Law)**

117.    Plaintiff hereby incorporates paragraphs 1 through 116 above.

118.    On information and belief, Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen, conspired to initiate extensive medical malpractice litigation against Dr. Sorensen, SCG, and other medical facilities.

119.    As part of the conspiracy, Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen accessed the Stolen Hard Drive and SCG billing records to ascertain the names, contact information, and medical care received by Dr. Sorensen's former patients.

120.    Despite knowing that the Stolen Hard Drive and SCG billing records were stolen, Zabriskie Law Firm, Mr. Zabriskie, FNJ, and Mr. Nolen contacted over 800 of Dr. Sorensen's former patients to solicit their participation in medical malpractice suits against Dr. Sorensen, SCG, and other medical facilities.

121.    As a proximate result of Defendants' conduct, Dr. Sorensen has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial.

**SEVENTH CAUSE OF ACTION**
**(Application for Injunctive Relief Against All Defendants)**

122.    Plaintiff hereby incorporates paragraphs 1 through 121 above.

123.    Defendants' actions have harmed and threaten to harm Dr. Sorensen.  Should Defendant's be allowed to retain and use the information on the Stolen Hard Drive and SCG billing records, Dr. Sorensen will continue to face the possibility of frivolous malpractice actions, as well as the uncertainty of whether he is required to report Defendants' use of the Stolen Hard Drive and SCG billing records under HIPAA.  Additionally, the information contained on the Stolen Hard Drive and SCG billing records pertains to Dr. Sorensen's former patients.  This information rightfully belongs to Dr. Sorensen and Defendants' retention and use of the Stolen Hard Drive and SCG billing records constitutes a violation of both federal and state law.

124.    As a result of the numerous and ongoing violations of federal and state law, Dr. Sorensen is entitled to injunctive relief prohibiting Defendants from accessing, deleting, modifying, copying, or using the Stolen Hard Drive or SCG billing records.

125.    As a result of the numerous and ongoing violations of federal and state law, Dr. Sorensen is further entitled to injunctive relief requiring Defendants to return the SCG Drive, its contents, the SCG billing records, and any copies of the SCG Drive or SCG billing records to Plaintiff.  Defendants should also be required to deliver any notes, memoranda, summaries, or compilations in their possession that contain information from the SCG Drive or SCG billing records.  The Court should also require Defendants to verify under oath that they have delivered

all such documents and information as noted above, and have not retained any copies in any form or format.

## **PRAYER FOR RELIEF**

WHEREAS, Plaintiff prays for relief against Defendants as follows:

A.     A decree from this Court that Defendants are in possession of individually identifiable health information as defined by federal law;

B.     A decree from this Court that Defendants' use of the individually identifiable health information in their possession is unauthorized by federal law;

C.     An award of actual damages as proven at trial on all appropriate claims in the Complaint;

D.     An award of all statutory damages as allowed by federal or state law;

E.     That each of the Defendants and its respective officers, agents, attorneys, and employees, and all other persons acting or planning to act on behalf thereof, or in concert therewith be perpetually enjoined and restrained from, directly or indirectly, accessing, deleting, modifying, copying, or using the Stolen Hard Drive or SCG billing records.

F.     That this Court grant an injunction against the Defendants, compelling them to: (1) return the Stolen Hard Drive, its contents, the SCG billing records, and any copies of the Stolen Hard Drive or SCG billing records to Plaintiff; (2) deliver any notes, memoranda, summaries, or compilations in Defendants' possession that contain information from the Stolen Hard Drive or SCG billing records; and (3) verify under oath that they have delivered all such documents and information as noted above, and have not retained any copies in any form or format.

G.      An award of punitive or treble damages as allowed by law;

H.      An award of pre-judgment and post-judgment interest as allowed by law;

I.      An award of costs and attorneys' fees incurred by Plaintiff herein as allowed by law; and

J.      Any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action for which a jury is permitted.

## VERIFICATION

DATED this ___8___ day of ___JANUARY___, 2018.

_____
SHERMAN G. SORENSEN

STATE OF ARIZONA      )
                      ) :ss
COUNTY OF _Maricopa_  )

On the __8th__ day of __January__, 2018, personally appeared before me SHERMAN G. SORENSEN; who duly acknowledged to me that he has read the foregoing *Verified Complaint and Jury Demand*; that the same is true to the best of his knowledge, information and belief; and, that he duly executed the same.

VICTORIA JEAN ZIMMERMAN
Notary Public - Arizona
Maricopa County
My Comm. Expires Oct 21, 2019

_____
Notary Public

DATED this 17th day of January, 2018.

STIRBA, P.C.

By: _____
PETER STIRBA
BRADLEY A. SCHMIDT

*Attorneys for Plaintiff Sherman G.*
*Sorensen, M.D.*