IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH

| | |
|---|---|
| SHERMAN G. SORENSEN, M.D.,<br><br>Plaintiff,<br>vs.<br><br>GERALD I. POLUKOFF, M.D.; ZABRISKIE LAW FIRM, LLC, a Utah limited liability company; RHOME ZABRISKIE, J.D.; FLEMING, NOLEN & JEZ, LLP, a Texas limited liability partnership; and RAND P. NOLEN, J.D.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>CASE NO. 2:18-CV-67 TS<br>Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Court will grant in part Defendants' Motion. Specifically, the Court will dismiss Plaintiff's claims under RICO and HIPAA. Before determining whether to exercise jurisdiction over Plaintiff's remaining state-law claims, which are not addressed here, the Court will give Plaintiff an opportunity to amend his RICO claim.

I. BACKGROUND

Dr. Sherman Sorensen ("Plaintiff") formed the Sorensen Cardiovascular Group ("SCG") in 2006 and provided cardiology services in Salt Lake City, Utah, until December 2011. Plaintiff is known for his expertise in a medical procedure known as patent foramen ovale ("PFO") closures, which are used to fix a defect in the septum between the upper atrial chambers of the heart.

In 2009, Dr. Gerald Polukoff met with Plaintiff about working for SCG as a Cardiologist and learning more about PFO closure techniques. However, Dr. Polukoff did not start working at

1

SCG until June 2011. Then, in July 2011, Plaintiff suffered a heart attack and decided to retire at the end of the year. Plaintiff discussed his retirement with Dr. Polukoff, and the decision was made to either pay out the rest of Dr. Polukoff's contract or turn SCG over to him. "Dr. Polukoff indicated that he would consider the offer, but that he would need to ensure the financial viability of SCG before deciding to either accept or reject."[1]

SCG stored its patient billing records on a series of hard drives that were maintained by TecCon, Inc.[2] Plaintiff claims that Dr. Polukoff was not authorized to access these hard drives, but Dr. Polukoff allegedly met with TecCon on October 7, 2011, and was provided with a hard drive to take offsite and remote access to SCG's billing records.

A month later, Dr. Polukoff informed Plaintiff that he would not assume ownership of SCG. Plaintiff paid out the rest of Dr. Polukoff's contract and terminated his employment. Plaintiff learned soon after Dr. Polukoff's termination that Dr. Polukoff had remote access to SGC's billing records and that a backup hard drive might be missing. Plaintiff instructed TecCon to terminate Dr. Polukoff's access and sent an email asking Dr. Polukoff if he "was aware of a missing backup hard drive. Dr. Polukoff denied any knowledge of a missing hard drive and indicated to Dr. Sorensen that he would look through his things for a hard drive, but never indicated as to whether one was ultimately found."[3]

On December 6, 2012, Dr. Polukoff initiated a *qui tam* action against Plaintiff, SCG, and several others in the United States District Court for the Middle District of Tennessee alleging

---

[1] Docket No. 2 ¶ 38.

[2] "These patient billing records contained confidential and sensitive patient information, which included: (1) patient names, addresses, telephone numbers, and other personal identifying information; (2) patient demographic information; (3) patient insurance information; (4) patient charges; and (5) a summary of the care received by SCG patients." *Id.* ¶ 14.

[3] *Id.* ¶ 52.

"that Dr. Sorensen had performed medically unnecessary PFO closures on patients and conspired with the other defendants in the *qui tam* action to improperly bill the United States Government by submitting false claims for reimbursement under Medicare and Medicaid."[4] Dr. Polukoff later hired Mr. Rand Nolen and Fleming, Nolen, & Jez, L.L.P ("FNJ"), located in Texas, to act as counsel in the *qui tam* action and delivered the SCG hard drive to Mr. Nolen. Counsel for Plaintiff then sent a letter to Mr. Nolen demanding return of the hard drive and any other protected health information and demanded that Dr. Polukoff and his attorneys provide declarations under oath that they did not alter or copy any of the files on the hard drive. The hard drive has not been returned.

Eventually, Dr. Polukoff's claims against several of the defendants in the *quit tam* action were dismissed, and the case was transferred to this Court where the Honorable Judge Jill Parrish dismissed the remainder of the action with prejudice on January 19, 2017. That action is now on appeal before the Tenth Circuit Court of Appeals and the United States has intervened.

A year later, Plaintiff brought this action against Dr. Polukoff, Mr. Nolen, FNJ, Rhome Zabriskie, and the Zabriskie Law Firm, LLC (collectively, "Defendants") asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and several Utah statutes and common law. Additionally, Plaintiff seeks declaratory relief regarding alleged violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). According to Plaintiff, Mr. Nolen and FNJ used the patient billing information on the hard drive to identify Plaintiff's former patients and sent that information to Mr. Zabriskie and the Zabriskie Law Firm (collectively, "Law Firm Defendants"), who acted as co-counsel in the *qui tam* action. The Law Firm Defendants then allegedly worked together to target and solicit Plaintiff's former patients to

---

[4] *Id.* ¶ 54.

participate in medical malpractice lawsuits against Plaintiff. Plaintiff argues that "[t]he object of this theft and scheme was to enrich Dr. Polukoff, and his lawyers, by their solicitation of potential clients fraudulently obtained from the information contained on the hard drive."[5]

Defendants have now filed this Motion to Dismiss arguing, *inter alia*, that Plaintiff's Complaint fails under Rule 12(b)(6) because the hard drive was not stolen, all of the information on it was turned over to the government as part of the *qui tam* action, the Law Firm Defendants separately pursued cases for Plaintiff's patients who underwent allegedly unnecessary PFO closures, and all advertising involved in finding those patients was both permitted and ethical since it did not mention Plaintiff and was marketed to the public.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[6] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[7] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9]

---

[5] Docket No. 32, at 2.

[6] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

4

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[11]

### III. DISCUSSION

Because this Court's jurisdiction rests on federal question jurisdiction, the Court deems it appropriate to consider the Motion to Dismiss as it relates to Plaintiff's federal claims.

A. *Civil RICO Claim*

In this action, federal jurisdiction rests primarily on Plaintiff's RICO claim. Section 1964(c) of RICO provides a private right of action for persons injured in their business or property by reason of a violation of § 1962. Plaintiff claims that Defendants violated 18 U.S.C. § 1962(c) which provides:

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"That is, RICO vests a private citizen with substantive rights to avoid 'injur[ies]' to 'his business or property' caused by a pattern of racketeering activity, and it explicitly creates a federal cause

---

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[11] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

of action to vindicate those federal rights."[12] "To survive a Rule 12(b)(6) motion, a civil RICO claim must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[13] Defendants argue that Plaintiff has failed to adequately allege a violation of RICO. The Court agrees that Plaintiff failed to adequately allege a pattern of racketeering activity.

A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."[14] Additionally, "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."[15]

Plaintiff pleads that Defendants engaged in the predicate acts of mail fraud, wire fraud, the interstate transportation of stolen property, and extortion. "To establish the predicate act of mail fraud, [Plaintiff] must allege '(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United

---

[12] *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017) (quoting 18 U.S.C. § 1964(c)).

[13] *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

[14] 18 U.S.C. § 1961(5).

[15] *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "In our view, Congress had a more natural and commonsense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *Id.* at 237.

States mails for the purpose of executing the scheme."[16] "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud."[17]

> '[T]he common thread among . . . these crimes is the concept of 'fraud.' Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.' Failure to adequately allege any one of the nine elements is fatal to the fraud claim.[18]

Finally, "the particularity requirement of Rule 9(b), Federal Rule of Civil Procedure, applies to claims of mail and wire fraud."[19] Therefore, the Complaint "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof. A plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme."[20]

1. *Mail Fraud*

Plaintiff alleges that the Law Firm Defendants are sending solicitation letters to Plaintiffs' former patients which contain false statements and assert that Plaintiff performed

---

[16] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991)); *see* 18 U.S.C. § 1341.

[17] *Tal*, 453 F.3d at 1263 (quoting *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1102 (10th Cir. 1999)).

[18] *Id.* (quoting *BancOklahoma Mortg. Corp.*, 194 F.3d at 1103).

[19] *Id.*; *Cayman Expl. Corp.*, 873 F.2d at 1362 ("[W]e believe that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts. We believe this is particularly important in cases where the predicate fraud allegations provide the only link to federal jurisdiction.").

[20] *Id.* (internal citations and quotation marks omitted); Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

unnecessary PFO closures on the patients. "While Dr. Sorensen cannot allege the exact number of instances in which the Defendants have sent the aforementioned letters, Dr. Sorensen can confirm that such a letter was transmitted on at least one occasion."[21] Plaintiff concedes not knowing all of the dates the letters were sent, but argues that, "based upon the volume of communications that would be necessary to solicit over 800 former patients, the number of fraudulent uses of the mail and interstate wire number in the hundreds and continue today."[22]

Plaintiff also alleges that each letter contained paperwork the patient could sign in order to allow the Law Firm Defendants to initiate an action against Plaintiff. If the former patient did not respond, the Law Firm Defendants allegedly send a follow up letter stating, "We have received the first opinion back on one of these hearings and the DOPL panel found that our claim against the doctor (performing an unnecessary pfo/asd closure procedure) had merit. Keep in mind that the facts in this client's case were nearly identical to the facts in your case."[23] Plaintiff argues that all of this was done in order to "induce patients to sign up for malpractice claims against Plaintiff."[24]

Defendants, however, argue that Plaintiff's allegations fail because "not only does Sorensen fail to identify a single client who was 'solicited,' he does not—because he cannot—identify a communication to a single solicited individual supposedly accessed from the hard drive."[25] Defendants also argue that their mailings did not name Plaintiff, and the mailings were widely disseminated and did not specifically target Plaintiff's former patients. Because of this,

---

[21] Docket No. 2 ¶ 86.

[22] *Id.*

[23] *Id.* ¶ 72.

[24] Docket No. 32, at 16.

[25] Docket No. 17, at 16.

the mailings do not constitute mail fraud, and any issues Plaintiff has with the mailings fall under issues of solicitation. However, since solicitation by lawyers is within the province of the Utah State Bar, and Plaintiff is a private party, he has no cause of action and cannot enforce the Bar's disciplinary rules.

While Plaintiff does show how the mailings fit in with Defendants' alleged scheme, and that more than 800 former patients have filed lawsuits against him, he fails to plead when these letters were sent, which, if any, of his former patients received these letters, that the content of these letters was directed toward Plaintiff's patients, or that the letters made false claims about Plaintiff's PFO closures. Thus, the Court finds that Plaintiff fails to plead mail fraud with particularity.

2. *Wire Fraud*

Plaintiff alleges that the Zabriskie Law Firm and Mr. Zabriskie made false and misleading statements including: "(1) statements on [their] website that many of the PFO closures performed by Dr. Sorensen were performed in violation of FDA and AMA standards; and (2) stating on their website and Facebook page that Dr. Sorensen engaged in 'medical abuse.'"[26] Plaintiff also asserts that Defendants "posted false Facebook postings in an attempt to generate bogus claims that could then be asserted against Dr. Sorensen and two major hospitals . . . ."[27]

Plaintiff, however, fails to plead wire fraud with particularity. He pleads facts regarding who made the statements, where the statements were made, and the general nature of those statements. However, no facts are pleaded as to when the posts containing these statements were published, no quotes from the posts or support for Plaintiff's summary of the posts has been

---

[26] Docket No. 2 ¶ 87.

[27] Docket No. 32, at 3.

produced, and no facts were pleaded as to whether any of Plaintiff's former patients brought lawsuits against Plaintiff as a consequence of the posts, let alone whether any former patients saw the posts.

Further, any public Facebook posts on the Zabriskie Law Firm Page would not fit into Defendants' alleged scheme of using stolen information from a hard drive to specifically target Plaintiff's former patients and induce them to bring "bogus claims" against him. Additionally, a public post would allow Plaintiff to easily provide the Court with the full and exact wording of the Facebook post, which allegedly calls out Plaintiff by name, but Plaintiff has not provided this to the Court.

Therefore, the Court finds that Plaintiff failed to plead wire fraud with particularity and thus, wire fraud will not be considered a predicate act in Plaintiff's RICO claim.

3. *Interstate Transportation of Stolen Property*

18 U.S.C. § 2315 provides that a person is in violation of the statute if he:

> receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more . . . which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken[.]

According to Plaintiff, Defendants stole the hard drive, sent it to Mr. Nolen across state boundaries, Mr. Nolen received it, Defendants knew it was stolen, and the hard drive has a value exceeding $5,000. Taken in the light most favorable to Plaintiff, the Court finds that these facts sufficiently plead a violation of § 2315 and will consider this to be a predicate act.

4. *Extortion*

Plaintiff alleges that Defendants are using the stolen information from the hard drive in an attempt to extract a large financial settlement from Dr. Sorensen, SCG, and other medical providers, by threatening extensive litigation. Plaintiff argues that "[s]uch conduct constitutes extortion as defined in 18 U.S.C. § 1951."[28] In response, Defendants cite to *Deck v. Engineered Laminates*,[29] arguing that "*Deck* holds unequivocally that 'threats of meritless litigation' and 'allegations of bad-faith litigation' fail to state a RICO 'predicate act of extortion.'"[30]

The *Deck* court held "that although extortion is a proper predicate act, a claim of extortion cannot be based on mere abusive litigation."[31] The court explained that "recognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim."[32] Therefore, "allegations of bad-faith litigation do not state the predicate act of extortion."[33] In this case, the threat of extensive litigation, whether meritorious or frivolous, is, at worst, abusive or bad-faith litigation. It is not, however, extortion under § 1951, and the Court finds that Plaintiff failed to plead extortion and the Court will not consider it as a predicate act.

Therefore, because Plaintiff failed to properly plead two predicate acts under RICO, the Court finds Plaintiff's RICO claim defective and dismisses it for having failed to state a claim upon which relief may be granted. However, the Court will grant Plaintiff an opportunity to amend his Complaint to attempt to remedy the deficiencies set forth above.

B. *HIPAA Declaratory Relief Claim*

---

[28] Docket No. 2 ¶ 85.

[29] 349 F.3d 1253 (10th Cir. 2003).

[30] Docket No. 35, at 6.

[31] *Deck*, 349 F.3d at 1256.

[32] *Id.* at 1258.

[33] *Id.*

With his next federal claim, Plaintiff requests declaratory relief regarding Defendants' alleged violation of HIPAA. However, "the Declaratory Judgments Act is not an independent source of federal jurisdiction[, and] the availability of such relief presupposes the existence of a judicially remediable right. No such right exists here."[34] In other words, a judicially remediable right does not exist here because "HIPAA does not create a private right of action for alleged disclosures of confidential medical information."[35] "[A]llowing [Plaintiff] to proceed in a declaratory judgment action with [HIPAA] as the source of the underlying substantive law is tantamount to allowing a private cause of action, which Congress refused to provide."[36] Therefore, the Court declines to provide declaratory relief because Plaintiff has no remediable right and any HIPAA claim brought by Plaintiff would fail as a matter of law. Therefore, this claim is dismissed with prejudice.

## IV. CONCLUSION

It is therefore

---

[34] *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) ("However, the Declaratory Judgment Act does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction. Thus, in the absence of any pleading that invokes diversity jurisdiction, ordinarily the relevant basis is federal question jurisdiction under 28 U.S.C. § 1331.") (internal quotation marks omitted).

[35] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1269 n.4 (10th Cir. 2010) (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)); *Sethunya v. Monson*, No. 2:12-CV-454-TS, 2013 WL 65471, at *3 (D. Utah Jan. 4, 2013) ("HIPAA provides federal protection for personal health information. However, the Tenth Circuit has made clear that HIPAA does not create a private right of action for alleged disclosures of confidential medical information. For this reason, Plaintiff's HIPAA claim fails as a matter of law.") (internal quotation marks omitted).

[36] *Anglade v. Wells Fargo Bank, N.A.*, No. 11-80483-Civ-Hopkins, 2011 WL 13227965, at *2 (S.D. Florida Oct. 19, 2011) (citing *Johnson v. Milwaukee County*, No. 04-C-242, 2006 WL 272754, at *3 (E.D. Wis. Feb. 1, 2006) ("Johnson's claim for declaratory judgment on his Health [Health Insurance Portability and Accountability Act ('HIPAA')] claim cannot proceed. There is no private right of action under HIPAA.")).

ORDERED that Defendants' Motion to Dismiss (Docket No. 17) is GRANTED IN PART. Plaintiff's request for declaratory relief under HIPAA is DENIED WITH PREJUDICE. Plaintiff's RICO claim is DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend the Complaint as to the RICO claim within fourteen (14) days of this Order. Defendants may then renew their Motion to Dismiss as to the RICO claim only. All other arguments addressed in Defendants' Motion to Dismiss are taken under advisement.

DATED this 30th day of April, 2018.

BY THE COURT:

_____
Judge Ted Stewart