IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHERMAN G. SORENSEN, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>GERALD I. POLUKOFF, M.D.; ZABRISKIE LAW FIRM, LLC, a Utah limited liability company; RHOME ZABRISKIE, J.D.; FLEMING, NOLEN & JEZ, LLP, a Texas limited liability partnership; and RAND P. NOLEN, J.D.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION TO DISMISS PLAINTIFF'S REVISED SECOND AMENDED COMPLAINT<br><br>Case No. 2:18-CV-67 TS-PMW<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Amended Motion to Dismiss Plaintiff's Revised Second Amended Complaint. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

I. BACKGROUND

Plaintiff is a cardiologist who has been licensed in the State of Utah since 1982. In 2006, Plaintiff formed the Sorenson Cardiovascular Group ("SCG"), which provided cardiology services in Salt Lake City, Utah, until December 2011.

Plaintiff developed an expertise in medical procedures known as patent foramen ovale ("PFO") and atrial septal defect ("ASD") closures. Plaintiff has performed a large number of PFO and ASD closures and provided follow-up care for those patients through his practice with SCG. As a result of this care, Plaintiff maintained medical and billing records for each patient. Medical charts were stored at the SCG office while billing records were maintained digitally and

were stored on a series of hard drives that were housed on the SCG site. A local technical support company, TecCon, Inc., performed the maintenance and periodic replacement of these hard drives for SCG as well as general IT service.

In 2009, Defendant Polukoff approached Plaintiff and expressed an interest in working for SCG as a cardiologist. Ultimately, Plaintiff decided that he was not interested in bringing Polukoff onto the SCG staff at that time.

In 2011, Plaintiff was appointed a professor of medicine at the University of Utah School of Medicine. As a result, he decided to scale back his clinical practice. Plaintiff reached out to several cardiologists, including Polukoff, to inquire about their interest in joining the SCG staff.

In 2011, Polukoff entered into an employment agreement with SCG. Under that agreement, Polukoff was to provide services to SCG and its patients through medical services, emergency/on call coverage, as well as admitting and referring patients. Polukoff was not authorized to make decisions or formulate policies on behalf of SCG. He was also not given authority to access patient medical records, charts, or any of SCG's billing records.

In July 2011, Plaintiff suffered a heart attack. Because of his heart attack, Plaintiff decided to retire in December 2011. Plaintiff approached Polukoff about his decision and informed Polukoff that he would either pay Polukoff the balance of his guaranteed salary or he would turn the SCG practice over to Polukoff. Polukoff indicated that he would consider the offer but needed to ensure the financial viability of SCG before making his decision.

On October 7, 2011, Polukoff met with TecCon without Plaintiff's authorization, knowledge, or consent. Polukoff falsely informed a TecCon technician that he would be

assuming ownership of SCG, instructed that new backup hard drives be installed (which he concealed from Plaintiff), and requested his own hard drive to take off site.

On October 14, 2011, Polukoff again met with TecCon without Plaintiff's authorization, knowledge, or consent. Polukoff instructed TecCon to set up and provide him with remote access to SCG's billing records. Polukoff also sent emails to TecCon falsely stating that he was authorized to access patient information.

On October 25, 2011, Polukoff obtained a hard drive, which contained information of approximately 10,000 patients. TecCon also opened a port on the server for Polukoff to have access to the remote desktop, which gave Polukoff access to everything stored digitally at SCG.

On November 4, 2011, Polukoff, without the knowledge, authorization, or consent, of Plaintiff signed a new "TecCon Service Level Agreement" for SCG. This agreement was to redo the entire IT infrastructure at SCG.

In early November 2011, Polukoff declined the offer to take over Plaintiff's practice. As a result, Plaintiff and Polukoff executed an Agreement and General Release under which Polukoff was paid a lump sum of $200,000. Soon after, Plaintiff was informed that a backup hard drive might be missing. Plaintiff sent an email to Polukoff asking if he was aware of a missing hard drive, which Polukoff denied.

On December 6, 2012, Polukoff initiated a *qui tam* action against Plaintiff, SCG, St. Mark's Hospital, Intermountain Healthcare, Intermountain Medical Center, and HCA, Inc (the "*qui tam* action"). In that action, Polukoff alleged that Sorenson had performed unnecessary medical procedures for which he improperly billed the government. Polukoff and his attorneys admit that they accessed and used information obtained from the hard drive in the *qui tam* action.

The hard drive was also provided to the United States Department of Justice. Plaintiff requested the return of the hard drive, but Polukoff, through his attorneys, declined.

In this action, Plaintiff alleges that Defendants—Polukoff, his attorneys, and their law firms—schemed to deprive him of the hard drive and used the information contained on the hard drive in the *qui tam* action and to solicit Plaintiff's former patients to participate in medical malpractice lawsuits against Plaintiff.

Plaintiff filed this action on January 19, 2018. Plaintiff asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Health Insurance Protectability and Accountability Act ("HIPPA"), misappropriation of trade secrets, conversion, receiving stolen property, and civil conspiracy. Plaintiff also requested injunctive relief.

The Court dismissed Plaintiff's HIPPA and RICO claims and declined to exercise supplemental jurisdiction over the remaining state-law claims. Plaintiff appealed the Court's decision that he had failed to adequately plead a pattern of racketeering activity. The Tenth Circuit reversed and remanded.

Plaintiff has now filed a Revised Second Amended Complaint. Defendants seek dismissal of all claims.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as

the nonmoving party.[1] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5] As the Court in *Iqbal* stated,

> [o]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[6]

### III. DISCUSSION

A. JUDICIAL PROCEEDING PRIVILEGE

Defendants argue that all of Plaintiff's claims are barred by the judicial proceeding privilege. Utah common law recognizes that the "judicial proceeding privilege immunizes

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

5

certain statements that are made during a judicial proceeding from defamation claims."[7] The Utah Supreme Court has expanded the privilege to extend to attorney conduct, not just statements.[8] "[T]he privilege presumptively attaches to conduct and communications made by attorneys on behalf of their clients in the course of judicial proceedings."[9] However, the privilege does not provide blanket immunity against all claims raised against attorneys.[10]

> Where a plaintiff pleads that an attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's, the privilege can be lost. Additionally, where an attorney has committed fraud or otherwise acted in bad faith, which is inherently acting in a manner foreign to his duties as an attorney, the privilege will not shield an attorney from civil liability.[11]

Defendants' claim that the judicial proceeding privilege bars all of Plaintiff's claims is overbroad in two ways. First, Plaintiff has alleged conduct that is unrelated to judicial proceedings and, thus, would not be protected by the privilege. Second, Plaintiff has alleged that Defendants engaged in fraud and/or acted in bad faith. There may be portions of Plaintiff's claims that are barred by this privilege, but it would not dispose of them entirely. Therefore, dismissal is not appropriate.[12]

---

[7] *Pratt v. Nelson*, 164 P.3d 366, 376 (Utah 2007).

[8] *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1164 (Utah 2012).

[9] *Id.* at 1166.

[10] *Id.*

[11] *Id.* (internal citations and quotation marks omitted).

[12] *FTC v. Nudge, LLC*, ---F. Supp. 3d---, 2019 WL 7398678, at *13 & nn.121–22 (D. Utah 2019) (explaining that partial dismissal of claims is not appropriate under Rule 12(b)(6)); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief. Summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for "[p]artial [s]ummary [j]udgment" and require parties to "identif[y] each claim or defense—or the

The parties also dispute the applicability of the privilege to Plaintiff's federal claims. Several courts, including this one, have declined to apply state-law privileges to federal causes of action.[13] The Court finds the cases cited by Defendants to be either inapposite or unpersuasive and declines Defendants' invitation to apply Utah's judicial proceeding privilege to Plaintiff's RICO and DTSA claims. Even if the Court did apply that privilege to Plaintiff's federal law claims, it would not result in dismissal for the reasons set forth above.

B.      *NOERR-PENNINGTON* DOCTRINE

Defendants argue that they are entitled to immunity under the *Noerr-Pennington* doctrine.[14] Their argument is better classified as a claim that their litigation activities are protected by the right to petition contained in the First Amendment.[15] "[T]he First Amendment shields from liability those who petition the government by invoking judicial process."[16] This immunity applies to the "actual litigation itself."[17]

---

part of each claim or defense—on which summary judgment is sought.") (internal citation omitted).

[13] *See, e.g., Procter & Gamble v. Haugen*, 506 F. Supp. 2d 883, 887 (D. Utah 2007) (refusing to apply state-law privilege to Lanham Act claims); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action."); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (rejecting argument that California's litigation privilege barred federal copyright claim); *Johnson v. JP Morgan Chase Bank*, 536 F. Supp. 2d 1207, 1213 (E.D. Cal. 2008) (holding that RICO and FDCPA claims preempted California's litigation privilege); *Pescatrice v. Orovitz*, 539 F. Supp. 2d 1375, 1380 n.4 (S.D. Fla. 2008) (holding that Florida's litigation privilege did not apply to FDCPA claims).

[14] *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[15] *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 888–91 (10th Cir. 2000).

[16] *Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*, 297 F. App'x 773, 778 (10th Cir. 2008).

[17] *Cardtoons, L.C.*, 208 F.3d at 887.

Like their argument with respect to Utah' judicial proceeding privilege, Defendants overstate the scope of the *Noerr Pennington* doctrine. While that doctrine might provide immunity for Defendants' litigation activities, Plaintiff's claims go well beyond simply the *qui tam* and negligence actions. Therefore, dismissal of all claims is not appropriate on this ground.

C.  RICO

"To survive a Rule 12(b)(6) motion, a civil RICO claim must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[18] Defendants make a number of arguments as to why Plaintiff's RICO claim is subject to dismissal. While nearly all of Defendants' arguments are incorrect, the Court agrees that Plaintiff has failed to sufficiently plead continuity and will, therefore, restrict its discussion to that issue.

A "pattern of racketeering activity" must include "at least two acts of racketeering activity" in a ten-year period.[19] To show a pattern of racketeering activity, a RICO plaintiff must also satisfy two additional elements: "a relationship between the predicates" and "the threat of continuing activity."[20] A plaintiff may demonstrate continuity by establishing either closed-ended or open-ended continuity.[21]

"[C]losed-ended continuity requires 'a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months' are

---

[18] *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

[19] 18 U.S.C. § 1961(5).

[20] *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (internal citations and quotation marks omitted).

[21] *Id.* at 241.

insufficient. Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct."[22] "A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity."[23]

Plaintiff's description of the alleged scheme demonstrates that continuity has not been sufficiently alleged. The Revised Second Amended Complaint alleges:

> The Scheme and Artifice to Defraud included the acquisition of the Stolen Hard Drive and the use of Protected and Confidential Patient Information and trade secret information through trickery, falsehoods, and active concealment in violation of federal law. The information was to be used and monetized for the Defendants financial benefit to fraudulently access, use and misappropriate trade secret information to fraudulently induce thousands of patients to file medical malpractice lawsuits and/or use the information without the knowledge or consent of the patients, in violation of federal law, to wit HIPAA and DTSA, in other litigation such as the qui tam litigation and in untold medical malpractice suits against Mr. Sorensen, Intermountain Healthcare, Inc., Intermountain Medical Center, Sorensen Cardiovascular Group, and/or other healthcare providers.[24]

"Plaintiff[] allege[s] what is actually a closed-ended series of predicate acts constituting a single scheme [the acquisition and use of alleged trade secrets] to accomplish a discrete goal [to facilitate the *qui tam* action and induce former patients to bring malpractice actions] directed at a finite group of individuals [Dr. Sorensen, SCG, Intermountain Healthcare, Inc., and Intermountain Medical Center] 'with no potential to extend to other persons or entities.'"[25]

---

[22] *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989) (quoting *H.J. Inc.*, 492 U.S. at 242).

[23] *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 677–78 (10th Cir. 2005).

[24] Docket No. 97 ¶ 99.

[25] *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (quoting *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)).

Therefore, Plaintiff has not alleged continuity and this claim is subject to dismissal on this ground.

Plaintiff attempts to argue that the scheme is not so limited and is directed at thousands of individuals. Plaintiff states the scheme was directed at other healthcare providers who may have been involved in the procedures. However, Plaintiff does not identify these unknown providers. Plaintiff also argues that his former patients are targets of the scheme. This argument fails for a number of reasons. First, it is an improper attempt to resurrect his dismissed HIPPA claim. Second, HIPPA violations are not predicate acts under RICO.[26] Third, the patients have not suffered an injury that is cognizable under RICO. Therefore, Plaintiff's RICO must be dismissed.

D.     DTSA

Plaintiff asserts a claim under the recently enacted Defend Trade Secret Act ("DTSA"). "The DTSA only applies to any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of [the] Act on May 11, 2016."[27] Misappropriation is defined as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"; or the "disclosure or use of a trade secret" without the consent of the owner.[28]

---

[26] *Wheeler v. Hilo Med. Ctr., Inc.*, Civil No. 09-00533 JMS/KSC, 2010 WL 1711993, at *8 n.11 (D. Haw. Apr. 27, 2010).

[27] *Camick v. Holladay*, 758 F. App'x 640, 644 (10th Cir. 2018) (internal quotation marks omitted) (alteration in original).

[28] 18 U.S.C. § 1839(5)(A)-(B).

Defendants argue that Plaintiff's DTSA claim is barred because "nearly all of Sorensen's factual allegations pre-date the enactment of the DTSA entirely."[29] While Defendants are somewhat correct, their use of the qualifier "nearly" is telling. That is because the Complaint contains numerous allegations that Defendants used the alleged trade secrets after the enactment of the DTSA. Moreover, Plaintiff alleges that Defendants continue to use the alleged trade secrets.

Defendants' reliance on *Camick* is misplaced. The Tenth Circuit in *Camick* noted "that courts have interpreted the DTSA to apply to misappropriations that began prior to the DTSA's enactment, but only if an act of misappropriation continues to occur after the enactment date."[30] In that case, there were no allegations of continued misappropriation, only "conclusory allegations of 'past and present' misappropriation."[31] Here, there are well pleaded allegations of continued use of the alleged trade secrets. The Complaint alleges more than just conclusory allegations of past and present misappropriation.

Defendants further argue that another provision of the DTSA shields them from immunity. 18 U.S.C. § 1833(b)(1) provides:

> An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that--
> (A) is made--
> (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and
> (ii) solely for the purpose of reporting or investigating a suspected violation of law; or
> (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

---

[29] Docket No. 103, at 25.

[30] *Camick*, 758 F. App'x at 645.

[31] *Id.*

11

This provision may immunize Defendants from liability for their disclosure of the hard drive to the Department of Justice and Polukoff's disclosure to attorneys for possible investigation of False Claims Act violations. However, it cannot be seriously argued that all the allegations in the Complaint demonstrate that the disclosure of the alleged trade secrets was "solely for the purpose of reporting or investigating a suspected violation of law."

Finally, Defendants argue that Plaintiff's DTSA allegations are conclusory. But this argument ignores the factual allegations contained in the Complaint. Defendants do nothing to address those allegations to support their argument and the Court declines to do Defendants work for them.

E.     UTAH MISAPPROPRIATION OF TRADE SECRETS

Defendants seeks dismissal of Plaintiff's misappropriation of trade secret claim because the Court previously dismissed Sorensen's misappropriation counterclaim in the *qui tam* action. Defendants read too much into the Court's ruling in that related case. There, the Court dismissed the misappropriation claim on claim-splitting and statute of limitation grounds. Those same arguments do not apply in this case because Plaintiff has always maintained a claim for misappropriation and that claim was initially filed within the limitations period. Defendants make no effort to further explain why this claim should be dismissed on claim-splitting or limitations grounds.

Defendants argue, in a footnote, that because the Court dismissed the counterclaim in the *qui tam* action before the Tenth Circuit issued its mandate in this case, "the trade secrets claim is

not backdated to 2018."[32] Defendants fail to further develop this argument to demonstrate why dismissal is required. Additionally, while the mandate was not issued until after the Court's ruling in the *qui tam* action, the Tenth Circuit's decision was initially issued on August 15, 2019, prior to the Court's dismissal of Sorensen's counterclaim.

Defendants raise an undeveloped argument that this claim is barred by claim preclusion. However, claim preclusion requires, among other things, a final judgment on the merits in the earlier action.[33] There is no final judgment in the *qui tam* case. Further, there is nothing in the Court's ruling in that case to indicate that the dismissal of Sorensen's counterclaims was with prejudice. Generally, a dismissal without prejudice lacks preclusive effect.[34] Additionally, as was noted by the Court in the *qui tam* action, the Court's previous decision to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims in this case does not result in res judicata.

F. CONVERSION

Defendants argue that Plaintiff's conversion claim fails for three reasons. First, they argue that Polukoff had a legal right to disclose material information to the government and pursue a False Claims Act as a relator. However, Plaintiff's conversion claim is not based on his disclosure to the government. Therefore, this argument fails.

Second, Defendants argue that, to the extent that this claim is based on the misappropriation of trade secrets or other confidential information, it is preempted. This

---

[32] Docket No. 107, at 13 n.4.

[33] *Mitchell v. City of Moore,* 218 F.3d 1190, 1202 (10th Cir. 2000).

[34] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).

argument is well taken. The Utah Court of Appeals has held "that a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information."[35] This Court has found conversion claims to be preempted when they are based on factual allegations supporting a misappropriation of trade secrets.[36] Thus, to the extent that Plaintiff's conversion claim is based on the misappropriation of Plaintiff's patient lists and billing records, that claim is barred. However, this would not bar the claim as it relates to the hard drive itself as Plaintiff has not claimed that it is a trade secret, only that it contains trade secrets.

Finally, Defendants argue that Plaintiff's conversion claim is time barred. In Utah, "[t]he statute of limitations for conversion is three years."[37] Defendants argue that Plaintiff suspected that Polukoff stole the hard drive in November 2011, providing him notice of his claim.

Defendants' argument oversimplifies Plaintiff's allegations. In November 2011, Plaintiff became aware that Polukoff had been granted remote access to SCG's billing records. It was not until December 13, 2011, that Plaintiff was alerted that a hard drive might be missing. In response to this information, Plaintiff contacted Polukoff to ask about the hard drive and Polukoff denied any knowledge of it. Plaintiff further alleges that it was not until December 2015 that he learned Polukoff possessed the hard drive.

---

[35] *CDC Restoration & Constr., LC v. Tradesman Contractors LLC*, 274 P.3d 317, 331 (Utah Ct. App. 2012).

[36] *Soundvision Techs., LLC v. Templeton Grp. Ltd.*, 929 F. Supp. 2d 1174, 1197 (D. Utah 2013).

[37] *Ockey v. Lehmer*, 189 P.3d 51, 60 (Utah 2008).

Plaintiff argues that Polukoff's fraudulent concealment should toll the limitations period. The fraudulent concealment branch of the equitable discovery rule may operate to toll a statute of limitations "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct."[38] In their Reply, Defendants argue that Plaintiff has not alleged fraudulent concealment, but this is plainly false. Defendants also argue that Plaintiff was on notice by late 2011. This overstates the allegations in the Complaint. Moreover, Defendants fail to recognize that Plaintiff does not need to plead facts to overcome an affirmative defense like statute of limitations.[39] Thus, dismissal on an affirmative defense is proper "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."[40] Additionally, the Utah Supreme Court has made clear that "[t]he question of when a plaintiff reasonably would have discovered the facts underlying a cause of action in light of a defendant's affirmative concealment is a highly fact-dependent legal question[] that is necessarily a matter left to trial courts and finders of fact."[41] Therefore, dismissal is not appropriate.

G.  RECEIPT OF STOLEN PROPERTY

Plaintiff asserts a claim against the attorney Defendants for receiving stolen property. Utah Code Ann. § 76-6-408(2) provides:

> A person commits theft if the person receives, retains, or disposes of the property of another knowing that the property is stolen, or believing that the property is probably stolen, or who conceals, sells, withholds, or aids in concealing, selling, or

---

[38] *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 747 (Utah 2005).

[39] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

[40] *Id.*

[41] *Carson*, 108 P.3d at 750 (quotation marks omitted) (second alteration in original).

withholding the property from the owner, knowing or believing the property to be stolen, intending to deprive the owner of the property.

Utah Code Ann. § 76-6-412(2) states that "[a]ny individual who violates Subsection 76-6-408(2) . . . is civilly liable for three times the amount of actual damages, if any sustained by the plaintiff, and for costs of suit and reasonable attorney fees."

Defendants argue that § 76-6-408 applies only to pawnbrokers, secondhand businesses, and coin dealers. While the statute does have a subsection that creates a presumption of knowledge that applies to these three groups, there is no indication that the statute is limited to only these groups.[42]

Defendants attempt to bolster their argument by citing to two cases, neither of which is on point. In *Alta Industries Ltd. v. Hurst*,[43] the Utah Supreme Court addressed a prior version of the statute with different wording. At that time, "Subsection 76-6-412(2) provide[d], 'Any person who has been injured by a violation of Subsection 76-6-408(1) may bring an action *against any person mentioned in Subsection 76-6-408(2)(d)* for three times the amount of actual damages . . . .'"[44] Subsection 76-6-408(2)(d) in turn listed "a pawnbroker or person who has or operates a business dealing in or collecting used or secondhand merchandise or personal property."[45]

The court held that "[t]he plain meaning of the statute limits its application to pawnbrokers and similar businesses that generally deal in small purchases of secondhand

---

[42] Utah Code Ann. § 76-6-408(4).
[43] 846 P.2d 1282 (Utah 1993).
[44] *Id.* at 1291 (emphasis added).
[45] *Id.*

16

consumer goods. It does not include businesses that regularly deal in large bulk orders of raw industrial material."[46] Since that decision, however, the statute has been amended. The limitation once contained in Utah Code Ann. § 76-6-412 that provided the basis for the court's decision is no longer present. Defendants fail to address this.

Defendants also point to this Court's decision in *Butler v. EME, Inc.*[47] In that case, the Honorable Evelyn J. Furse addressed a claim for treble damages under Utah Code Ann. § 76-6-412. Judge Furse noted that this provision "provides a plaintiff with treble damages in a civil case, if a court finds an individual violated other sections of the criminal code not material to this case."[48] In doing so, Judge Furse referenced Utah Code Ann. § 76-6-408(1),[49] the statute relied upon by Plaintiff. Judge Furse did not conclude that § 76-6-408 was limited in any way, only that because the plaintiff had "not alleged, nor has a court found the EME Defendants violated any provisions of the Utah Criminal Code," the plaintiff was not entitled to treble damages.[50]

Here, Plaintiff has specifically alleged a violation of Utah Code Ann. § 76-6-408. Defendants make no argument that the allegations are insufficient to state a claim under this statute. Therefore, this claim will not be dismissed.

H. CIVIL CONSPIRACY

"To prove a civil conspiracy, plaintiff must show the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the

---

[46] *Id.* at 1291–92.

[47] No. 2:17-cv-140-EJF, 2018 WL 2289881 (D. Utah May 18, 2018).

[48] *Id.* at *13.

[49] *Id.* at *13 n.4.

[50] *Id.* at *13.

minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[51]

Defendants argue that this claim fails because Plaintiff has failed to allege any underlying tort. This argument necessarily depends on the Court agreeing that the other state-law claims should be dismissed. For the reasons set forth above, the Court largely rejects Defendants' arguments as to those claims.

Defendants also argue that Plaintiff has failed to plead that Defendants agreed to any fraudulent action or engaged in unlawful overt acts. This argument is belied by the allegations in the Complaint, which Defendants do not meaningfully address.

I. CLAIMS AGAINST LAWYER DEFENDANTS

The individual attorney Defendants argue that they cannot be held personally liable for actions taken in the scope of their employment. While this is the general rule, members or managers of limited liability companies and partnerships can be held liable for their own wrongful conduct even if conducted during the scope of their employment.[52] There are sufficient allegations that the individual attorney Defendants engaged in conduct that might subject them to personal liability. Therefore, dismissal is not appropriate on this ground.

---

[51] *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

[52] *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 525 (Utah Ct. App. 2006); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).

J.  INJUNCTIVE RELIEF

Plaintiff's eighth cause of action seeks injunctive relief. Injunctive relief is a remedy, not a separate cause of action, available where a party prevails on a separate legal theory.[53] Therefore, this cause of action must be dismissed. Plaintiff is free to request injunctive relief, as he has already done. Given the developments in this case since Plaintiff initially filed his motion for preliminary injunction, the Court requests that Plaintiff re-file his motion. The Court will address Plaintiff's request for injunctive relief through that motion.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Amended Motion to Dismiss Plaintiff's Revised Second Amended Complaint (Docket No. 102) is GRANTED IN PART AND DENIED IN PART as set forth above.

DATED this 7th day of April, 2020.

BY THE COURT:

Ted Stewart
United States District Judge

---

[53] *Romstad v. City of Colo. Springs*, 650 F. App'x 576, 585 n.7 (10th Cir. 2016) ("An injunction is not an independent cause of action; it is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.") (internal quotation marks omitted).