Peter Stirba (#3118)
peter@stirba.com
STIRBA, P.C.
215 South State Street, Suite 750
Salt Lake City, UT 84110-0810
Telephone: 801-364-8355
Facsimile: 801-364-8300

*Attorneys for Plaintiff*

Jefferson W. Gross (#8339)
jwgross@grossrooney.com
Melinda Checketts (#6098)
mchecketts@grossrooney.com
GROSS & ROONEY
136 East South Temple, Suite 1500
Salt Lake City, UT 84111
Telephone: 801-935-4611
Facsimile: 801-935-4612

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHERMAN G. SORENSEN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> GERALD I. POLUKOFF, M.D., ZABRISKIE LAW FIRM, LLC, a Utah limited liability company, RHOME ZABRISKIE, J.D., FLEMING NOLEN & JEZ, L.L.P., a Texas limited liability partnership, and RAND P. NOLEN, J.D., <br><br> Defendants. | Central Division No. 2:18-CV-00067-TS-PW <br> Judge Ted Stewart <br> Magistrate Jared C. Bennett <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **JURY DEMAND** |

# TABLE OF CONTENTS

**Page**

PREFERRED DISPOSITION AND GROUNDS ........................................................................ 1

RESPONSES TO DEFENDANTS' UNDISPUTED MATERIAL FACTS ................................ 3

ARGUMENT ...................................................................................................................... 9

I.      LEGAL STANDARDS ................................................................................ 9

II.     PLAINTIFF REQUIRES ADDITIONAL TIME TO OBTAIN DISCOVERY
       TO SHOW THAT DEFENDANTS HAVE NOT MET THEIR BURDEN IN
       SHOWING THAT THEIR CONDUCT IS PROTECTED BY THE FIRST
       AMENDMENT RIGHT TO PETITION ...................................................... 10

       A.     Plaintiff Requires Additional Time to Obtain Discovery to Support His
              Allegations of Defendants' Unethical and Wrongful Conduct Which
              Conduct Bars Application of First Amendment Immunity ................................ 10

       B.     Plaintiff Requires Additional Time to Obtain Discovery to Dispute
              Defendants' Assertion that the Underlying Actions Were Not Sham
              Actions ......................................................................................................... 12

III.    DEFENDANTS HAVE NOT MET THEIR BURDEN IN SHOWING THAT
       UTAH'S JUDICIAL PROCEEDINGS PRIVILEGE BARS PLAINTIFF'S STATE
       LAW CLAIMS ........................................................................................... 15

IV.    THE COURT SHOULD NOT STAY THIS MATTER ................................. 17

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                     **Page**

*Allen v. Muskogee*,
119 F.3d 837 (10th Cir. 1997) .............................................. 9

*Anderson v. Liberty Lobby, Inc*,
477 U.S. 242 (1986) ................................................. 9, 10, 11

*California Motor Transport v. Trucking Unlimited*,
404 U.S. 508 (1972) ..................................................... 4, 11

*Cerveny v. Aventis, Inc.*,
855 F. 3d 1091 (10th Cir. 2017) ........................................... 10

*Comm. for First Amendment v. Campbell*,
962 F. 2d 1517 (10th Cir. 1992) ...................................... 10, 17

*In re Elysium Health-Chromadex Litigation*,
354 F. Supp. 3d 330 (S.D.N.Y. 2019) ............................... 12, 15

*In re Flonase Antitrust Litigation*,
795 F. Supp. 2d 300 (E.D. Pa. 2011) ................................... 15

*Moss v. Parr Waddoups Brown Gee & Loveless*,
2012 UT 42, 285 P.3d 1157 ......................................... 4, 16, 17

*Mover's & Warehouseman's Association of Greater New York, Inc. v.*
*Long Island Moving & Storage Association, Inc.*,
1999 WL 1243054 (S.D.N.Y. Dec. 16, 1999) ....................... 4, 11

*New W., L.P. v. City of Joliet*,
491 F.3d 717, 722 (7th Cir. 2007) ) .................................. 13

*U.S. ex rel. Polukoff v. St. Mark's Hosp.*,
895 F.3d 730 (10th Cir. 2018) ) ......................................... 7

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................. 9

Fed. R Civ. P. 56(d) .................................................................................................... 10, 15, 17

Plaintiff Sherman Sorensen, M.D. ("Plaintiff"), by and through counsel, hereby submits his Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment (the "Motion").

## PREFERRED DISPOSITION AND GROUNDS

Pursuant to Fed. R Civ. P. 56(d), Plaintiff requests that the Court deny Defendants' Motion for Summary Judgment, or in the alternative, that the Court defer considering the Motion because Plaintiff "cannot present facts essential to justify his opposition". Therefore, Plaintiff further requests that the Court "allow time [for Plaintiff] to obtain affidavits, declarations or to take discovery" to justify Plaintiff's opposition to the Motion. *See* Fed. R. Civ. P. 56(d). Plaintiff refers the Court to Plaintiff's Motion for Discovery Under Federal Rule of Civil Procedure 56(d) and the Declaration of Melinda Checketts dated September 9, 2020, filed in support of Plaintiff's Motion for Discovery, both of which are filed concurrently with this Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

In their Motion, Defendants claim that Plaintiff has put the cart before the horse. However, that is precisely what Defendants have done filing their Motion while this case is in its infancy before discovery necessary to oppose this Motion has been taken.

The Court will recall that the discovery period in this matter just recently commenced. And since the commencement of the discovery period the parties have been focused on determining the proper representation of the various Defendants. The dust has just barely settled regarding Defendants' legal representation to determine which of the Defendant attorneys and law firms could participate and in what role in the discovery, pretrial and trial phase of this matter as determined by the Court's August 25, 2020 Order deeming Plaintiff's Motion to

1

Disqualify moot because of Defendants' last-minute reconfiguration of their legal representation as evidenced by a flurry or notices of appearance and notices of withdrawals just filed on August 4, 2020.

In the midst of all of this confusion – created by Defendants – Defendants filed this Motion for Partial Summary Judgment. However, this Motion was filed well before either side has taken, or even requested dates for, any depositions. Neither side has yet asked for dates for any depositions, nor have any been noticed as the parties have been focused on other issues.

One particularly difficult aspect of this case for Plaintiff is that most all of the information and/or documents needed to oppose this Motion (or even for Plaintiff to pursue this action) is in Defendants' and/or other third parties' control – not in Plaintiff's possession or control.

Plaintiff is entitled to conduct discovery to test the unchallenged (to date) assertions made in the declarations of Defendants Polukoff and Nolen submitted in support of Defendants' Motion.

Also, Defendants' Motion relies heavily on arguments and facts completely unanticipated by Plaintiff such as characterizing Qui Tam settlements with third-party co-defendant hospitals as evidence that the Qui Tam action was not a sham as against Plaintiff. Never were these facts and the individuals with knowledge of these facts ever disclosed to Plaintiff. Hence, Plaintiff could not and would not have anticipated taking discovery regarding the same.

Plaintiff must now be given the opportunity to conduct this discovery, as set forth more fully in the Checketts Declaration.

Discovery will reveal Defendants' bad faith, conspiracy and wrongdoing in obtaining and accessing the confidential information on the hard drive with the end goal of using this wrongfully obtained information to pursue the Qui Tam and Malpractice claims against Plaintiff. Defendants' bad faith, wrongdoing and tortious and illegal acts are not sanitized by Defendants' commencing legal actions. Thus, Plaintiff is entitled to additional time to conduct discovery regarding Defendants' prefiling activities.

This Motion should be denied, or in the alternative, the Court should defer considering the Motion until Plaintiff can conduct discovery to obtain facts to justify Plaintiff's opposition.

### RESPONSES TO DEFENDANTS' UNDISPUTED MATERIAL FACTS

| DEFENDANTS' ASSERTION | PLAINTIFF'S RESPONSE |
|---|---|
| 1. Plaintiff Sherman G. Sorensen, M.D. is a cardiologist licensed in the State of Utah. Plaintiff's Revised Second Amended Complaint ("RSAC") at ¶¶ 3, 9. | Undisputed. |
| 2. In 2006, Dr. Sorensen formed Sorensen Cardiovascular Group, which provided cardiology services in Salt Lake City, Utah until December 2011. RSAC at ¶ 3. | Undisputed. |
| 3. The majority of Dr. Sorensen and Sorensen Cardiovascular Group's medical practice focused on the closure of patent foramen ovales ("PFO") and atrial septal defects ("ASD"). App. at A013-14 (Ex. A, Qui Tam Depo. of Sorensen for SCG 30(b)(6), at 44:10 – 46:02), A065 (Ex. B, Qui Tam Depo. of Phillips for SCG 30(b)(6), at 87:07-16). *See also* RSAC at ¶¶ 9, 13. | Undisputed for purpose of this Motion only. |
| 4. Defendant Gerald Polukoff, M.D., is also a cardiologist licensed in the State of Utah. App. at A081 (Ex. C, Aff. of Polukoff, at ¶ 2); RSAC at ¶¶ 4, 21. | Undisputed. |
| 5. Dr. Polukoff was employed by Sorensen Cardiovascular Group as a cardiologist from August-November 2011. RSAC at ¶¶ 29-31. | Undisputed. |

| | |
|---|---|
| 6.  As a result of a heart attack in July 2011, Dr. Sorensen made the decision that he would retire in December 2011. RSAC at ¶¶ 37-38. | Undisputed. |
| 7.  During his time with Sorensen Cardiovascular Group, Dr. Polukoff acquired a hard drive containing some of the patient billing records from Sorensen Cardiovascular Group.[4]  App. at A082 (Ex. C, Aff. of Polukoff, at ¶ 12).<br><br>[4]The parties continue to dispute the nature of that acquisition and the ownership of the hard drive. Those issues aren't material to this motion. | Disputed to the extent that this fact suggests that Dr. Polukoff appropriately or rightfully acquired a hard drive containing some of the patient billing records from Sorensen Cardiovascular Group.  Dr. Polukoff's bad faith or wrongdoing in acquiring the hard drive is a significant and relevant factor in determining with the First Amendment right to petition the government and/or the state litigation privilege immunizes Defendants' conduct.  *See e.g. Mover's & Warehouseman's Association of Greater New York, Inc., v. Long Island Moving & Storage Association, Inc*., 1999 WL 1243054 at *5 (S.D.N.Y. Dec. 16, 1999) (emphasis added); citing *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 512 (1972) ("unethical conduct in the setting of the adjudicatory process … cannot seek refuge under the Noerr-Pennington doctrine") (other citations omitted); *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 37, 285 P.3d 1157, 1166. Moreover, Plaintiff is not able to dispute or confirm this fact because Plaintiff has not yet had the opportunity to conduct discovery, including the taking of Dr. Polukoff's deposition to delve into the circumstances surrounding Dr. Polukoff's acquisition of the hard drive and acquisition of the contents of the hard drive.  (*See* Declaration of Melinda Checketts dated September 9, 2020 (the "Checketts Decl.") ¶¶ 22, 23, 28(a-b), filed concurrently herewith.) |
| 8.  On December 6, 2012, Dr. Polukoff initiated a qui tam action against Dr. Sorensen, Sorensen Cardiovascular Group, St. Mark's Hospital, Intermountain Healthcare, Intermountain Medical Center, and HCA, Inc, alleging fraudulent billing to federal healthcare | Undisputed. |

| | |
|---|---|
| programs in violation of the False Claims Act (the "Qui Tam"). RSAC at ¶ 61. | |
| 9. As the Qui Tam Relator, Dr. Polukoff alleged that Dr. Sorensen had performed medically unnecessary PFO closures on patients and conspired with certain hospitals to improperly bill the United States Government by submitting false claims for reimbursement under Medicare and Medicaid. RSAC at ¶ 62. *See generally* App. at A086-118 (Ex. D, Qui Tam Original Complaint). | Undisputed. |
| 10. Contemporaneously with the filing of the Qui Tam, Dr. Polukoff disclosed certain information, including the contents of the hard drive, to the United States Department of Justice pursuant to 31 U.S.C. § 3730(b)(2). App. at A083-84 (Ex. C, Aff. of Polukoff, at ¶¶ 18-22). | Plaintiff is not presently able to dispute this fact because Plaintiff has not yet conducted discovery on this issue, including the taking of depositions of Dr. Polukoff and/or others at the United States Department of Justice to delve into the circumstances surrounding the disclosures of the contents of the hard drive to the United States Department of Justice. (*See* Checketts Decl., ¶¶ 22,23, 28(e).) |
| 11. The original Qui Tam complaint was filed under seal pursuant to 31 U.S.C. § 3730(b)(2) on December 6, 2012. *See generally* App. at A086-118 (Ex. D, Qui Tam Original Complaint). | Undisputed for purposes of this Motion, but irrelevant. |
| 12. The Qui Tam Complaint was unsealed on June 19, 2015. App. at A132 (Ex. E, Qui Tam Docket Report, Doc. 36). | Undisputed for purposes of this Motion, but irrelevant. |
| 13. On October 7, 2015, Defendants Rand Nolen and Fleming Nolen & Jez, LLP, first appeared as counsel for Dr. Polukoff in the Qui Tam. App. at A132 (Ex. E, Qui Tam Docket Report, Doc. 39, Motion to Appear Pro Hac Vice). | Irrelevant because the date that Defendants Rand Nolen and Fleming Nolen & Jez, LLP, first appeared as counsel for Dr. Polukoff in the Qui Tam is not relevant to the issues in the instant matter or this Motion. This fact does not reveal how long prior to making their appearances as counsel these Defendants were working on this matter and in what capacity and with knowledge and possession of which facts. Moreover, Plaintiff has not yet obtained discovery as to the circumstances of Dr. Polukoff's retaining of these Defendants for their legal services, including the depositions of these Defendants and Dr. Polukoff, and requesting documents relating to retainment |

| | agreements and other such documents relating to legal representation and acquisition of information and protected information by these Defendants. (*See* Checketts Decl., ¶¶ 22, 23, 28(f).) |
|---|---|
| 14. On December 3, 2015, Dr. Polukoff, as Relator in the Qui Tam, filed an amended complaint that included a redacted listing of patients. App. at A084 (Ex. C, Aff. of Polukoff, at ¶ 26), A136 (Ex. E, Docket Report, Doc. 90). | Undisputed. |
| 15. On April 14, 2016, the Qui Tam was transferred from the Middle District of Tennessee to the District of Utah. App. at A139 (Ex. E, Docket Report, Doc. 126). | Undisputed. |
| 16. On April 26, 2016, Defendants Rhome Zabriskie and the Zabriskie Law Firm first appeared as counsel for Dr. Polukoff in the Qui Tam. App. at A140 (Ex. E, Qui Tam Docket Report, Doc. 139, Notice of Appearance). | Irrelevant because the date that Defendants Rhome Zabriskie and the Zabriskie Law Firm, first appeared as counsel for Dr. Polukoff in the Qui Tam is not relevant to the issues in the instant matter or this Motion. This fact does not reveal how long prior to making their appearances as counsel these Defendants were working on this matter and in what capacity and with knowledge and possession of which facts. Moreover, Plaintiff has not yet obtained discovery as to the circumstances of Dr. Polukoff's retaining of these Defendants for their legal services, including the depositions of these Defendants and Dr. Polukoff, and requesting documents relating to retainment agreements and other such documents relating to legal representation and acquisition of information and protected information by these Defendants. (Checketts Decl., ¶¶ 22-24, 28(f).) |
| 17. On January 19, 2017, the district court (Hon. Jill Parrish) dismissed the Qui Tam under R.12(b)(6). *United States v. St. Mark's Hosp.*, No. 216CV00304JNPEJF, 2017 WL 237615, at *12 (D. Utah Jan. 19, 2017), rev'd and remanded sub nom. *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730 (10th Cir. 2018). | Undisputed. |

| | |
|---|---|
| 18.  On July 9, 2018, in reversing the dismissal the Tenth Circuit held that "a doctor's certification to the government that a procedure is 'reasonable and necessary' is 'false' under the FCA if the procedure was not reasonable and necessary under the government's definition of the phrase." And it concluded that "Dr. Polukoff adequately alleges that Dr. Sorensen performed unnecessary PFO closures on patients and then knowingly submitted false certifications to the federal government that the procedures were necessary, all in an effort to obtain federal reimbursement." *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 743 (10th Cir. 2018). | Disputed to the extent that Defendants' summary of the Tenth Circuit's opinion is an incomplete summary.  Moreover, this not a fact at all, but an attempt by Defendants at legal argument.  Plaintiff would refer the Court to the entire opinion at *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 743 (10th Cir. 2018). |
| 19.  In 2019 Relator obtained settlements with monetary compensation for the United States Government from the two separate hospitals in the Qui Tam. App. at A183 (Ex. F, Nolen Aff., at 14). The Department of Justice expressly approved those settlements. *Id.* | Irrelevant.  Settlement with co-defendants in the Qui Tam action is irrelevant to the legitimacy of the claims against Plaintiff in the Qui Tam action.  Moreover, Plaintiff can neither dispute nor confirm this fact because this is a fact completely within Defendants' knowledge and Plaintiff has not yet conducted discovery regarding the circumstances surrounding the alleged settlements with monetary compensation for the United States Government from the two hospitals in the Qui Tam action, including the amount of the settlements and the reasons of the parties motivating the settlements.  Presumably this information could be obtained from depositions with Defendants and representatives of two separate hospitals and from written requests for production of documents – none of which has yet occurred. (Checketts Decl., ¶¶ 22, 23, 25-27.) |
| 20.  Defendants Rand Nolen, Fleming Nolen & Jez LLP, Rhome Zabriskie, and the Zabriskie Law Firm also represent over 1,000 former patients in medical malpractice actions against Dr. Sorensen and the hospitals where he primarily practiced. Those actions allege that Dr. Sorensen performed unnecessary PFO closures on the individual patients, resulting in | It is irrelevant to the instant action that Defendants brought malpractice actions against third parties other than Plaintiff. |

| | |
|---|---|
| injuries (the "Malpractice Lawsuits"). App. at A183 (Ex. F, Nolen Aff., at 15). | |
| 21. All but a handful of the Malpractice Lawsuits are pending with the Utah Department of Professional Licensing as part of a pre-litigation review process. App. at A183 (Ex. F, Nolen Aff., at 16). | Irrelevant. Moreover, Plaintiff has not yet had opportunity to depose and cross-examine Defendant Nolen as to his assertions in his declaration. (Checketts Decl., ¶¶ 22, 23, 28(d), 29, 30.) |
| 22. Four of the Malpractice Lawsuits were filed in Utah state court and subject to motions to dismiss brought by Dr. Sorensen and other defendants in the Malpractice Lawsuits. App. at A183 (Ex. F, Nolen Aff., at 17).. | Undisputed but irrelevant. Defendants cite to no legal authority, nor is Plaintiff aware of any legal authority, that denying a motion to dismiss, in whole or in part, is any sort of evidence that the suit brought is not a sham. |
| 23. Three separate judges issued orders denying in whole or in part the motions to dismiss. App. at A183 (Ex. F, Nolen Aff., at 18) and A186-219 (Exs. G1-G3, State Court Orders). | Undisputed but irrelevant. Defendants cite to no legal authority, nor is Plaintiff aware of any legal authority, that denying a motion to dismiss, in whole or in part, is any sort of evidence that the suit brought is not a sham. |
| 24. Each of the three respective orders from Third District Judge Barry Lawrence, Judge Patrick Corum, and Judge Laura Scott denying R.12(b)(6) dismissal were appealed to the Utah Supreme Court by Dr. Sorensen and the other defendants in a single consolidated interlocutory appeal. App. at A183 (Ex. F, Nolen Aff., at 19) and A186-219 (Exs. G1-G3, State Court Orders). | Undisputed but irrelevant. Defendants cite to no legal authority, nor is Plaintiff aware of any legal authority, that denying a motion to dismiss, in whole or in part, is any sort of evidence that the suit brought is not a sham. |
| 25. After briefing and oral argument, the Utah Supreme Court affirmed denial of the motions to dismiss and remanded the cases to the trial courts. *Bright v. Sorensen,* 2020 UT 18, 463 P.2d 626, reh'g denied (Apr. 17, 2020). | Undisputed but irrelevant. Defendants cite to no legal authority, nor is Plaintiff aware of any legal authority, that denying a motion to dismiss, in whole or in part, is any sort of evidence that the suit brought is not a sham. |
| 26. Upon remand, the Malpractice Lawsuits were consolidated for pre-trial purposes. App. at A225 (Ex. H, Tapp Consolidation Order). | Undisputed but irrelevant. |
| 27. Recently, the plaintiffs in the Malpractice Lawsuits reached a settlement with one of the hospital defendants in relation to Sorensen's cardiac closure practice. App. at A230 (Ex. I, Tapp Stipulated Motion). | Irrelevant. Defendants cite to no authority, nor is Plaintiff aware of any authority, that settlement with a third-party defendant is any sort of evidence that the claims and suit brought against Plaintiff were not in fact a sham. Moreover, Plaintiff can neither dispute nor confirm this fact because this is a fact completely within Defendants' knowledge and Plaintiff has not yet conducted discovery regarding the |

| | circumstances surrounding the alleged settlement, including the amount of the settlements and the reasons of the parties motivating the settlements. Presumably this information could be obtained from depositions with Defendants and representatives of the hospitals and from written requests for production of documents – none of which has yet occurred. (Checketts Decl., ¶¶ 22, 23, 25-27.) |
|---|---|
| 28. In this case, as part of his claimed damages, Dr. Sorensen seeks to recover his attorney's fees, costs, and expenses incurred in defending against the Qui Tam and the Malpractice Lawsuits. App. at A246 (Ex. J, Sorensen Disclosures, at 13), A260-1 (Ex. K, Sorensen Response to Defendant Fleming Nolen & Jez's First Set of Interrogatories, No. 9). | Undisputed that as **part** of his claimed damages, Dr. Sorensen seeks to recover his attorney's fees, costs and expenses incurred in defending against the Qui Tam and the Malpractice Lawsuits. Dr. Sorensen also seeks to recover other damages. (*See* Defs.' App. at A246 (Ex. J, Sorensen Disclosures, at 13), A260-1 (Ex. K, Sorensen Response to Defendant Fleming Nolen & Jez's First Set of Interrogatories, No. 9.) |

## ARGUMENT

## I. LEGAL STANDARDS.

"Summary judgment is appropriate only if 'there is no genuine issue as to <u>any</u> material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A disputed fact is 'material if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court, therefore, must "construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." *Allen*, 119 F.3d at 839-840 (citations omitted).

The nonmoving party must be given fair opportunity to obtain facts to oppose a motion for summary judgment. Therefore, Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: [¶] (i) defer considering the motion or deny it; [¶] (ii) allow time to obtain affidavits or declarations or take discovery; or [¶] (iii) issue any other appropriate order." The Tenth Circuit, relying on the United States Supreme Court, has further emphasized that "'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.' Requests for further discovery should ordinarily be treated liberally." *Cerveny v. Aventis, Inc.*, 855 F. 3d 1091, 1110 (10th Cir. 2017); quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505 (1986); and citing *Comm. for First Amendment v. Campbell*, 962 F. 2d 1517, 1522 (10th Cir. 1992).

II. **PLAINTIFF REQUIRES ADDITIONAL TIME TO OBTAIN DISCOVERY TO SHOW THAT DEFENDANTS HAVE NOT MET THEIR BURDEN IN SHOWING THAT THEIR CONDUCT IS PROTECTED BY THE FIRST AMENDMENT RIGHT TO PETITION.**

A. **Plaintiff Requires Additional Time to Obtain Discovery to Support His Allegations of Defendants' Unethical and Wrongful Conduct Which Conduct Bars Application of First Amendment Immunity**.

In their Motion, Defendants set forth a lengthy explanation of the First Amendment right to petition, as it is referred to in the Tenth Circuit (or, as it is called in other circuits the Noerr-Pennington doctrine). (*See* Motion at pp. 10-12.) Defendants then assert that they are entitled to this First Amendment immunity for all of their unspecified "litigation activities." (*Id*. at pp. 1, 10.) However, Defendants failed to inform the Court that this immunity is not available to sanitize litigation activities arising out of unethical or wrongful conduct.

Plaintiff has alleged that Defendants engaged in substantial and significant wrongdoing prior to Defendants' filing either the Qui Tam action or the Malpractice Actions, e.g., in obtaining/stealing the hard drive, wrongfully accessing confidential patient information, wrongfully acquiring and disclosing trade secret information, and conspiring together.

It is these allegations of unethical and wrongful conduct which bars the automatic application of First Amendment immunity. The "abuse of the administrative and judicial process through unethical lawyer conduct … is ***unprotected*** by the Noerr-Pennington immunity." *Mover's & Warehouseman's Association of Greater New York, Inc., v. Long Island Moving & Storage Association, Inc*., 1999 WL 1243054 at *5 (S.D.N.Y. Dec. 16, 1999) (emphasis added); citing *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 512 (1972) ("unethical conduct in the setting of the adjudicatory process … cannot seek refuge under the Noerr-Pennington doctrine") (other citations omitted).

As set forth more fully in paragraphs 22-30 of the Checketts Decl., filed concurrently herewith, Plaintiff requires additional time to conduct discovery to obtain facts to justify its opposition. Plaintiff has also concurrently filed a motion requesting additional time. As the Supreme Court has noted, "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Requests for further discovery should ordinarily be treated liberally." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5, 106 S. Ct. 2505 (1986).

Here, Defendants have submitted the unchallenged Declarations of Defendants Polukoff and Nolen to assert no wrongdoing on the part of Defendants. Plaintiff is entitled to take the depositions of these, and all other Defendants and third parties, if needed, to ascertain the

veracity of these assertions of no wrongdoing – or at least, at a minimum to establish that there exists a dispute as to these facts.

    **B.**    **Plaintiff Requires Additional Time to Obtain Discovery to Dispute Defendants' Assertion that the Underlying Actions Were Not Sham Actions.**

In their Motion, Defendants also attempt to bolster their position that their actions in bringing the Qui Tam and Malpractice Actions are shielded by First Amendment immunity by asserting that these actions do not fall under the sham litigation exception. (*See* Motion at 12-17.) To support their position, Defendants point to alleged settlements reached with third parties in these actions. In particular, Defendants state that in the Qui Tam Action brought against Plaintiff and others including two separate hospitals, the two hospitals settled in the action. Defendants also seek to rely on their alleged fact that four of the nearly 1,000 medical malpractice claims brought by Defendants against Plaintiff, one of the co-defendants, Intermountain Healthcare ("IHC") allegedly settled last month. (*See* Motion at pp. 8, 14-15.) Therefore, Defendants argue, the Qui Tam Action and the Malpractice Actions are not baseless or "sham" as courts have held that settlement is evidence "of a winning lawsuit." (Motion at 13-14.) Defendants inappropriately seek to rely on *In re Elysium Health-Chromadex Litigation*, 354 F. Supp. 3d 330, 338 (S.D.N.Y. 2019) which "cites a collection of cases where settlement of a lawsuit constitutes a favorable outcome, precluding application of sham exception." (Motion at 13-14.)

It is curious that Defendants are attempting to rely upon alleged settlements with third parties (i.e., two separate hospitals in the Qui Tam action and IHC Health Services ("Intermountain") in a few malpractice suits) as evidence that the Qui Tam action and the malpractice suits were not sham suits against Plaintiff. This defies logic. In none of the cases in

the collection cited by Defendants, and in no case of which Plaintiff is aware, did a court ever

rely on settlement by a third party to establish the legitimacy of a law suit against a party not

privy to the settlement – and Defendants can't do so here.  That two separate hospitals may have

reached a settlement in the Qui Tam Action is not evidence that the Qui Tam action was a

"winning" action, and therefore not a sham, as against Plaintiff.  Similarly, that IHC may have

settled four of the approximately 1,000 medical malpractice claims do not mean that any of these

claims are "winning" actions as against Plaintiff.

Clearly, the claims against the hospitals and healthcare organization are different from

the claims against Plaintiff, and these third parties may have different motivations for settling the

suit.  There is no evidence that these third parties did not settle these suits for mere nuisance

value or for public relations reasons.  There is no acknowledgement by these third parties as to

the legitimacy of the actions nor is there any admissible evidence presented that the settlements

were, in fact, "substantial" lending any sort of legitimacy to these actions.  *See e.g. New W., L.P.*

*v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (settlement for a substantial payment may be

support that action was not a sham).  Moreover, as the parties to the malpractice suit

acknowledged in the stipulation the different positions vis-à-vis Dr. Sorensen and Intermountain

and that their interests were not necessarily aligned.  It states in pertinent part, ***"[g]iven the***

***difference*** in available discovery for and ***related to Intermountain and the Sorensen***

***Defendants*** [i.e., Plaintiff Dr. Sorensen, in the instant matter and Sorensen Cardiovascular

Group] the Parties requests the Court continue the currently scheduled telephone conference to

all the remaining Sorensen Defendants and the Plaintiffs to address discovery and scheduling of

the claims that will remain."  (Emphasis added.)  (Plaintiff's App. at 230 (Dkt. 133-1.)

Moreover, as set forth more fully at paragraphs 23-30 in the Checketts Declaration, Plaintiff needs additional time to obtain facts surrounding the circumstances of these settlements, to which Plaintiff was not a party, and the motivations of the parties to settle and any side agreements that may have been reached by the other parties as part of these settlements. Furthermore, the issues of any settlements with third parties was completely unanticipated by Plaintiff. Nowhere in Defendants' initial disclosure is any mention made of any settlement of any of these actions nor is anyone with knowledge of any of the circumstances surrounding these settlements listed in Defendants' initial disclosures. And yet, Defendants seek partial summary judgment relying on the "fact" that these settlements allegedly occurred. (*See* Defendants' Undisputed Fact No. 27, Motion at p. 8.)

The only evidence presented by Defendants is the Declaration of Defendant Nolen. Plaintiff is entitled to obtain discovery from all Defendants, including Nolen, and the third parties involved in these settlements. Also, of significance is the amount of each of the settlements – again which is in Defendants' and/or third parties' exclusive possession and control. Perhaps these actions settled for mere nuisance value. As Defendants note, a "***substantial***" settlement payment may be evidence that a lawsuit against the settling party is not a sham (*see* Motion at 14); however, no such suggestion is made regarding settlement of insubstantial or nonconsequential value. Therefore, Defendants should be estopped from presenting any evidence of these settlements as such evidence is irrelevant. And as Defendants have not disclosed the actual settlement agreements to which Plaintiff was not party, Defendants cannot cherry pick a few of the facts regarding these settlements that Defendants choose to

disclose without giving Plaintiff the opportunity to probe deeper into the specifics and circumstances of these settlements.

It is premature and not necessarily in the Court's province to find the Qui Tam action and the Malpractice Actions ***not*** to be sham litigation actions. Many federal courts "have generally regarded the applicability of the sham exception as a question of fact for the jury." *In re Elysium Health-Chromadex Litigation*, 354 F. Supp. 3d at 336; *citing e.g., In re Flonase Antitrust Litigation*, 795 F. Supp. 2d 300, 310 (E.D. Pa. 2011).Defendants are not entitled to partial summary judgment that their litigation activities are subject to First Amendment immunity – at least not at this juncture and not without affording Plaintiff the opportunity to obtain discovery to able to present facts essential to justify his opposition. *See* Fed. R. Civ. P. 56(d).

## III. DEFENDANTS HAVE NOT MET THEIR BURDEN IN SHOWING THAT UTAH'S JUDICIAL PROCEEDINGS PRIVILEGE BARS PLAINTIFF'S STATE LAW CLAIMS.

Just as Defendants are not entitled to partial summary judgment on the basis of First Amendment immunity because Plaintiff is entitled to obtain additional discovery to present facts regarding Defendants' wrongdoing and unethical behavior prior to filing suit in the Qui Tam and Malpractice Actions, neither are Defendants entitled to immunity under Utah's judicial proceedings privilege on the same grounds. And, again, Defendants are entitled to additional time to obtain discovery in order to present facts of Defendants' wrongful conduct to at least create a disputed fact as to whether the privilege applies.

Significantly, the Utah judicial proceedings privilege does not provide a "blanket immunity against all claims raised against [attorneys] merely because they are acting as [attorneys] in litigation. … [T]he judicial proceedings privilege is not without limits. . . .

[W]here an attorney has committed fraud or otherwise acted in bad faith, which is inherently 'acting in a manner foreign to his duties as an attorney,' the privilege will not shield an attorney from civil liability." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 37, 285 P.3d 1157, 1166 (citations omitted).

Plaintiff has alleged factual allegations impropriety, wrongdoing and bad faith on Defendants' part. These wrongdoings are not what the litigation privilege protects. The purpose of this privilege is to protect attorneys during the course of litigation who are acting "<u>within the law</u>, in a legitimate effort to zealously advance the interests of his clients." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 35, 285 P.3d 1157 (citations omitted). Stated another way, the purpose of the privilege is not to protect attorney who are acting outside the law.

In their Motion, Defendants repeatedly state that Plaintiff "cannot establish that any Defendants acted in bad faith to defeat the privilege" and the Plaintiff "cannot establish that a fraud exception applies either" and that Plaintiff cannot show that Defendants "'engaged in independent acts' that are 'outside of the representation of his client's interests.'" (*See* Motion at 21-22, citing *Moss*, 285 P.3d at 1166-68.) These assertions may be correct at present because evidence of Defendants' bad faith and fraud is exclusively within Defendants' possession. Hence, Plaintiff must be allowed the opportunity to conduct discovery regarding Defendants' wrongful actions.

For example, evidence as to Defendants' tactics used to communicate with and contact Plaintiff's patients is within Defendants' possession and control as is evidence relating to Defendants' solicitation of Plaintiff's patients, Defendants' wrongful acquisition of the hard

drive and the confidential patient information, wrongful use of trade secret information, etc. is in

Defendants' control.  Therefore, Plaintiff is requesting additional time to obtain discovery to

obtain facts essential to justify his opposition, which request should be liberally granted.  *See*

*Comm. for First Amendment*, 962 F.2d at 1522; *see also* Plaintiff's Motion for Discovery under

Federal Rule of Civil Procedure 56(d) and the Declaration of Melinda Checketts, filed

concurrently herewith.

## IV.     THE COURT SHOULD NOT STAY THIS MATTER.

Defendants alternatively seek to have this matter stayed until the conclusion of the Qui

Tam action and the Malpractice Lawsuits if the Court declines to grant their motion for partial

summary judgment.  This the Court should not do.  Defendants support for its alternative request

is based on a logical fallacy.  Defendants contend that if the Qui Tam action and/or the

Malpractice Lawsuits "resolve successfully in Defendants' favor, Petition Clause Immunity

would apply as a matter of law and preclude application of the sham exception."  (Opp'n at

23.)  This simply is not so.  As set forth in Sections II and III, above, success in the underlying

lawsuit does ***not*** mean that Petition Clause immunity and/or state litigation proceedings

immunity automatically apply.  Rather, Defendants' wrongful and/or unethical conduct, as

Plaintiff has alleged throughout the RSAC, makes either and both of these immunities

inapplicable.  Thus, there is no need or justification to stay the instant matter as the outcome of

this matter is not dependent on the outcome of the other matters.

<u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully requests that the Court DENY

Defendants' Motion for Partial Summary Judgment, or in the alternative, that the Court defer

considering this Motion to allow Plaintiff time to take discovery because at present he cannot present facts essential to justify his opposition.

DATED this 9th day of September, 2020.

GROSS & ROONEY

*/s/*    Melinda Checketts
*Attorneys for Plaintiff*