IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHERMAN G. SORENSEN, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>GERALD I. POLUKOFF, M.D.; ZABRISKIE LAW FIRM, LLC, a Utah limited liability company; RHOME ZABRISKIE, J.D.; FLEMING, NOLEN & JEZ, LLP, a Texas limited liability partnership; and RAND P. NOLEN, J.D.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(d) AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITHOUT PREJUDICE<br><br><br>Case No. 2:18-CV-67 TS-PMW<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff Sherman Sorensen, M.D.'s ("Plaintiff") Motion for Discovery Under Federal Rule of Civil Procedure 56(d) ("Motion"), filed in response to the Motion for Partial Summary Judgment filed by Gerald Polukoff M.D. ("Polukoff"), Zabriskie Law Firm, LLC, Rhome Zabriskie, J.D., Fleming, Nolan & Jez, LLP ("FNJ"), and Rand Nolen, J.D. (collectively "Defendants"). For the reasons discussed below, the Court will grant the Motion and deny Defendants' Motion for Partial Summary Judgment without prejudice.

I. BACKGROUND

Plaintiff is a cardiologist, licensed in Utah since 1982, who has performed many procedures known as Patent Foramen Ovale ("PFO") and Atrial Septal Defect ("ASD") closures.[1] In 2006, he formed Sorensen Cardiovascular Group ("SCG"), which provided

---

[1] Docket No. 97 ¶¶ 9, 13; Docket No. 112 ¶¶ 9, 13.

1

cardiology services in Salt Lake City, Utah, until December 2011.[2] As a result of the care he provided, Plaintiff maintained medical and billing records for his patients.[3]

Plaintiff explains that in early 2011, he became a professor of medicine at the University of Utah School of Medicine and, therefore, decided to scale back his practice.[4] To that end, Plaintiff reached out to Polukoff, who expressed some interest in joining SCG and learning PFO closure techniques.[5] In June 2011, Polukoff entered an employment agreement with SCG.[6] This agreement required Polukoff to comply with the SCG Access and Confidentiality Agreement, the Health Insurance Portability and Accountability Act ("HIPAA"), and the SCG Compliance Policies & Procedures.[7] In addition, Plaintiff claims the agreement did not authorize Polukoff to make decisions or formulate policies for SCG, as he was a contract employee.[8] Polukoff denies this.[9] Polukoff began practicing with SCG and observing Plaintiff's procedures in August 2011.[10]

Plaintiff suffered a heart attack in July 2011 and decided he would retire in December 2011.[11] Plaintiff approached Polukoff and offered to either pay him for the remainder of the one-

---

[2] Docket No. 97 ¶ 3; Docket No. 112 ¶ 3.
[3] Docket No. 97 ¶ 14; Docket No. 112 ¶ 14.
[4] Docket No. 97 ¶ 24.
[5] Docket No. 97 ¶¶ 26–27; Docket No. 112 ¶¶ 26–27.
[6] Docket No. 97 ¶ 30; Docket No. 112 ¶ 30.
[7] Docket No. 97 ¶ 33; Docket No. 112 ¶ 33.
[8] Docket No. 97 ¶ 32.
[9] Docket No. 112 ¶ 32.
[10] Docket No. 97 ¶¶ 34–35; Docket No. 112 ¶¶ 34–35.
[11] Docket No. 97 ¶¶ 37–38; Docket No. 112 ¶¶ 37–38.

2

year term or turn over SCG's practice to Polukoff.[12] Polukoff indicated to Plaintiff that he would consider the offer and needed to assess SCG's financial viability before making a decision.[13] Plaintiff claims he instructed his billing manager to provide Polukoff with a limited report of SCG's accounts receivable.[14] Plaintiff alleges Polukoff was not authorized, at any time, to access, copy, or use patient medical records or SCG billing records.[15] Plaintiff also alleges several members of his staff reported that Polukoff was attempting to obtain their passwords and access SCG billing records.[16] Polukoff denies these allegations.[17]

According to Plaintiff, Polukoff met with TecCon on October 7, 2011—the company that updated SCG's technological infrastructure earlier that year.[18] Polukoff informed a technician there that he would be assuming ownership of SCG and requested installation of new backup hard drives.[19] At Polukoff's request, TecCon also provided him with a hard drive to take off site and with remote access to SCG billing records, which included trade secret information and the confidential patient information of some 10,000 patients.[20] Polukoff denies these allegations.[21]

---

[12] Docket No. 97 ¶¶ 39–40; Docket No. 112 ¶¶ 39–40.
[13] Docket No. 97 ¶ 42; Docket No. 112 ¶ 42.
[14] Docket No. 97 ¶ 44.
[15] *Id.* ¶ 45.
[16] *Id.* ¶ 44.
[17] Docket No. 112 ¶¶ 44–45.
[18] Docket No. 97 ¶ 47.
[19] *Id.*
[20] *Id.* ¶¶ 47–51.
[21] Docket No. 112 ¶¶ 47–51.

3

Polukoff declined Plaintiff's offer to take over the practice and, on November 23, 2011, signed an Agreement and General Release.[22] This Agreement included a promise that Dr. Polukoff would not make any statements that were professionally or personally disparaging about Plaintiff, SCG, or SCG employees.[23] It also included a general release stating that Dr. Polukoff "releases, acquits, satisfies, and forever discharges SCG from any and all actions, causes of action, claims, demands, damages, expenses . . . whether or not Dr. Polukoff now knows about those actions . . ."[24]

Plaintiff states that around November 16, 2011, he became aware that Polukoff had received access to SCG billing records.[25] Plaintiff then instructed TecCon to terminate access.[26] Around December 13, 2011, SCG staff alerted Plaintiff that a backup hard drive might be missing.[27] Plaintiff emailed Polukoff about its whereabouts, and Polukoff denied knowledge of the missing hard drive.[28] Polukoff denies these allegations and denies any unauthorized access.[29]

On December 6, 2012, Polukoff initiated a *qui tam* action against Plaintiff and other defendants, alleging that Plaintiff performed medically unnecessary PFO and ASD closures and wrongfully billed the United States Government for these procedures.[30] Plaintiff alleges Polukoff

---

[22] Docket No. 97 ¶¶ 54–55; Docket No. 112 ¶¶ 54–55.

[23] Docket No. 97 ¶ 58; Docket No. 112 ¶ 58.

[24] Docket No. 97 ¶ 58; Docket No. 112 ¶ 58.

[25] Docket No. 97 ¶ 59.

[26] *Id.*

[27] *Id.* at ¶ 60.

[28] *Id.*

[29] Docket No. 112 ¶¶ 59–60.

[30] Docket No. 97 ¶¶ 61–62; Docket No. 112 ¶¶ 61–62; *United States et al v. St. Mark's Hospital et al*, 2:16-cv-304, Docket No. 421 ¶ 2.

4

delivered the stolen hard drive to Defendants Rand Nolen and FNJ in Texas, where it remains.[31] Polukoff acknowledges that the hard drive is in the custody of Defendant FNJ.[32] However, Polukoff explains that he acquired a copy of the SCG hard drive and several billing documents while looking into acquiring Plaintiff's practice and that Plaintiff gave him records for some of the PFO closures Plaintiff performed.[33] Polukoff also acknowledges having shared the hard drive with the United States Department of Justice.[34] Plaintiff requested the return of the hard drive, and Polukoff, through his attorneys, declined.[35]

In this action, Plaintiff alleges that Defendants—Polukoff, his attorneys, and their law firms—schemed to deprive him of the hard drive, used the information contained on the hard drive for the *qui tam* action, and further used this information to solicit Plaintiff's former patients to participate in medical malpractice lawsuits against Plaintiff.[36] Plaintiff originally filed this action on January 19, 2018.[37] Plaintiff asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), HIPAA, misappropriation of trade secrets, conversion, receiving stolen property, and civil conspiracy.[38] Plaintiff also requested injunctive relief.[39]

---

[31] Docket No. 97 ¶ 63.

[32] Docket No. 112 ¶ 65.

[33] *Id.* at ¶ 64.

[34] *Id.* at ¶ 66; Docket No. 97 ¶ 66.

[35] Docket No. 97 ¶ 67; Docket No. 112 ¶ 67.

[36] Docket No. 97 ¶¶ 68–73.

[37] *See* Docket No. 2.

[38] Docket No. 97 ¶¶ 94–172.

[39] *Id.* ¶¶ 173–176.

On April 30, 2018, the Court dismissed Plaintiff's HIPAA and RICO claims and declined to exercise supplemental jurisdiction over the remaining state-law claims.[40] Plaintiff appealed the Court's decision that he had failed to adequately plead a pattern of racketeering activity, and on August 15, 2019, the Tenth Circuit reversed and remanded.[41] On January 7, 2020, Plaintiff filed a Revised Second Amended Complaint.[42] On January 21, 2020, Defendants filed a motion to dismiss, which the Court granted in part and denied in part.[43] The Court rejected Defendants' argument for dismissal of all claims based on Utah's judicial proceedings privilege and the Noerr-Pennington doctrine.[44] This Court explained that dismissal was inappropriate under Utah's judicial proceedings privilege in part because (1) Plaintiff has alleged conduct unrelated to judicial proceedings, and (2) Plaintiff has alleged that Defendants acted fraudulently and/or in bad faith.[45] Regarding the Noerr-Pennington doctrine, this Court noted that Defendants' argument was better classified as a claim that their litigation activities are protected by the First Amendment right to petition, that this immunity applies to the litigation itself, and that Plaintiff's claims regarding Defendants' wrongdoing go beyond the *qui tam* and malpractice litigation itself.[46]

On August 12, 2020, Defendants filed a motion for partial summary judgment, asking the Court to revisit their arguments under Utah's judicial proceedings privilege and the First Amendment

---

[40] *See* Docket No. 41, at 13.

[41] *See Sorensen v. Polukoff*, 784 F. App'x. 572, 579 (10th Cir. 2019).

[42] *See generally* Docket No. 97.

[43] *See generally* Docket Nos. 102, 109.

[44] Docket No. 109, at 5–8.

[45] *Id.* at 6.

[46] *Id.* at 7–8.

6

right to petition.[47] Plaintiff opposes summary judgment on the merits[48] and also requests deferred consideration or denial of the motion under Federal Rule of Civil Procedure 56(d).[49] Defendants filed their opposition to the Motion on September 30, 2020,[50] and Plaintiff filed his reply on October 14, 2020.[51]

## II. STANDARD

Federal Rule of Civil Procedure 56(d)[52] provides a relief mechanism for a non-moving party in a summary judgment motion, if that party shows by affidavit or declaration that "it cannot present facts essential to justify its opposition" to the motion.[53] Rule 56(d) is "designed to safeguard against a premature or improvident grant of summary judgment."[54] In the Tenth Circuit, however, it "does not operate automatically."[55] Rather, "a party seeking to defer a ruling on summary judgment under Rule [56(d)] must provide an affidavit 'explain[ing] why facts precluding summary judgment cannot be presented.'"[56] Specifically, the party must identify "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps

---

[47] Docket No. 133, at 15–29.

[48] Docket No. 139.

[49] Docket No. 140.

[50] Docket No. 145.

[51] Docket No. 152.

[52] "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." FED. R. CIV. P. 56(d) advisory committee's note to 2010 amendment.

[53] *See* FED. R. CIV. P. 56(d).

[54] *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986).

[55] *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

[56] *Valley Forge Ins. Co., v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (quoting *Comm. for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir.1992)) (second alteration in original).

have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment."[57] While "[s]peculation cannot support a Rule 56(d) motion,"[58] "[u]nless dilatory or lacking in merit, the motion should be liberally treated."[59]

### III. DISCUSSION

The Court finds that Plaintiff has met his burden under Rule 56(d). He supports the Motion with an affidavit from his attorney, Melinda Checketts.[60] This affidavit properly identifies the probable facts not available, such as "[t]he circumstances regarding when and which Defendants came in possession of the hard drive and/or the contents of the hard drive," and "[t]he circumstances surrounding Defendants' contacting, solicitation of and communication with Plaintiff's patients."[61] Plaintiff explains that these facts cannot be presented currently because "Defendants are in possession of all the information regarding their communications and agreements amongst each other."[62] As Plaintiff explains, efforts to obtain this information to this point has largely been mired in efforts to ascertain who represented whom among the defendant parties.[63] Plaintiff notes he received clarification on this point from Defendants fifteen days before the deadline to file his opposition to Defendants' Motion for Partial Summary

---

[57] *Id.* (alterations in original) (quotation marks omitted).

[58] *FDIC v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013).

[59] *Comm. for First Amendment*, 962 F.2d at 1522 (quotation marks omitted).

[60] *See generally* Docket No. 141.

[61] Docket No. 141 ¶ 28.

[62] *Id.* at ¶ 29.

[63] *Id.* at ¶ 21–22.

8

Judgment.[64] Defendants do not dispute this but claim it is irrelevant to the Motion.[65] Plaintiff further explains that additional time will enable him to obtain facts necessary to rebut the motion for partial summary judgment by "uncover[ing] evidence that Defendants conspired together to wrongfully access the hard drive and to wrongfully contact and solicit Plaintiff's patients" and that they "wrongfully contacted and solicited Plaintiff's former patients."[66]

This is relevant information for Plaintiff's opposition to Defendants' motion for partial summary judgment. Defendants seek partial summary judgment claiming immunity from liability under the First Amendment right to petition and Utah's judicial proceedings privilege.[67] The information Plaintiff seeks to discover will help ascertain whether Defendants' conduct falls under these protections. As this Court previously articulated in response to Defendants' motion to dismiss,[68] to the extent that Utah's judicial proceedings privilege has any applicability here, it does not provide blanket immunity against all claims raised against attorneys.[69] In addition, the First

---

[64] *Id.* at ¶ 21.

[65] Docket No. 145, at 3.

[66] Docket No. 141 ¶¶ 29, 30.

[67] Docket No. 145, at 2.

[68] Docket No. 109, at 5–7.

[69] *See Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1166 (Utah 2012) ("Where a plaintiff pleads that an attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's, the privilege can be lost. Additionally, where an attorney has committed fraud or otherwise acted in bad faith, which is inherently acting in a manner foreign to his duties as an attorney, the privilege will not shield an attorney from civil liability.") (internal citations and quotation marks omitted).

Amendment's right to petition applies to the "actual litigation itself."[70] Therefore, discovery may reveal actions by Defendants that fall outside this immunity.

In addition, the Court does not find that Plaintiff has been dilatory in discovery efforts. Given the confusion over Defendants' counsel, it is understandable that "[e]xcept for preparing and serving his initial disclosures in May 2020, Plaintiff has refrained from conducting discovery until Defendants' legal representation issues were resolved and clarified by the Court."[71] This occurred "just 15 days before the deadline for Plaintiff to file his opposition to Defendants' Motion for Partial Summary Judgment."[72]

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Discovery Under Federal Rule of Civil Procedure 56(d) (Docket No. 140) is GRANTED and Defendants' Motion for Partial Summary Judgment (Docket No. 133) is DENIED without prejudice.

DATED this 16th day of November 2020.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[70] Docket No. 109, at 7–8; *see Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 887 (10th Cir. 2000).

[71] Docket No. 141 ¶ 22.

[72] *Id.* ¶ 21.